MARY THOMPSON vs. JAMES I. HALL, impleaded with James Thompson.

Where the promise contained in a promissory note is absolute, parol evidence can not be received for the purpose of incorporating into the contract a condition which might affect, or change the character of the contract between the parties.

This rule of evidence has been expressly applied in cases of sureties.

Where a witness, in answer to the question whether T. was able to pay his debts, at a-time specified, stated that he was not, and then proceeded to state numerous *facts* touching the property of T. and his indebtedness, showing an intimate acquaintance with the condition of T. and his utter insolvency; *Held* that no error was committed in receiving this evidence.

A surety is not discharged by reason of the neglect of the creditor to prosecute the principal debtor, when requested to do so, by the surety, if the principal was insolvent at the time, and unable to pay his debts, and continued so, ever afterwards.

In an action against a surety, he can not avail himself of the neglect of the creditor to prosecute the principal debtor under the provision of the Code permitting equitable defenses to be made.

It is a general rule that mere indulgence, on the part of the creditor, and neglect to prosecute the principal, will not discharge the surety.

APPEAL from a judgment entered upon the decision of a referee. The action was upon a promissory note, made by the defendant, James Thompson and the defendant Hall as his surety, dated December 11, 1854, for $284, payable one year from date, with interest. From the report of the referee, dated March, 1864, it appears that James Thompson paid upon the note, in February, 1857, $225.57, and that the balance upon the note at the date of the report, was $153.19, for which sum judgment was ordered against Hall. Hall signed the note as surety for the defendant Thompson, with the knowledge and at the request of the plaintiff, who was the mother of the principal debtor. That in July, 1858, Hall requested the plaintiff to proceed and collect the note by action, telling her that James was then good, and the note collectable. The plaintiff refused to prosecute the note, and neglected to take any measures for its collection until September 6, 1860, when this action was commenced, James

having left the state, was not served with the summons, in this action.   The referee also reports that when the request to collect the note was made, James resided in this state, and was possessed of property liable to execution; and that subsequently debts of a larger amount than the note were collected of him, after judgment and execution; but that in fact, at the time the request was made, James was insolvent, and unable to pay his debts, which were considerably greater than the value of all his property, and that he continued insolvent.   Some exceptions were taken upon the trial, which are sufficiently noticed in the opinion.

*Comstock & Healy*, for the plaintiff.

*A. P. Lanning*, for the defendant.

*By the Court*, MARVIN, J.   The counsel for the defendant offered to prove that the plaintiff requested him to sign the note as surety for James; that he declined, stating that the note was to run a year, and he thought the plaintiff would not collect it when due, as she would from a stranger.   That the plaintiff then promised that if Hall would sign the note she would collect it promptly when it should become due, if it was not paid; and further, that she would not dispose of the note.   That he, Hall, answered that he would sign the note if she would collect it promptly, when due, and he would sign it on no other condition; that the plaintiff again assented, and agreed to such condition, upon which Hall signed the note.   This offered evidence was objected to, upon the grounds: 1. That any verbal agreement or understanding was merged in the note; 2. That it contradicts the contents of the note.   The objection was sustained, and the defendants excepted.

No rule of evidence is better settled than that which rejects oral evidence to contradict or vary the written contract between the parties, or the legal effect of the written instru-

ment. The defendant Hall promised jointly and severally with James Thompson, to pay the plaintiff the sum named, one year from date, with interest. The promise was absolute, and parol evidence can not be received for the purpose of incorporating into the contract a condition which might affect or change the character of the contract between the parties to it, viz. the promisor and promisee. It is not necessary to cite authorities in support of this rule of evidence. It has been expressly applied in cases of sureties. *Hanchet* v. *Birge,* (12 *Metc.* 545,) is in point. And see 1 *Pars. on Notes and Bills,* 233 ; 2 *id.* 501, *et seq.*

The witness Wright stated that he was acquainted with James Thompson's pecuniary circumstances, and had been, for several years, and that he was not responsible. "Was he able to pay his debts, in December, 1855, in the usual course of trade ?" This question was objected to, and the objection was overruled, and the defendant excepted. The answer was : "No sir ; so far as I know, I know he was not." The witness then proceeded to state numerous *facts,* touching the property of James, and his indebtedness, showing a very full and intimate acquaintance with the condition of James, and his utter insolvency. In my opinion no error was committed in receiving this evidence. I do not understand the question as calling for the opinion of the witness, simply. In form, it called for a fact ; was James able to pay his debts, in the usual course of trade ? If the witness knew the fact, there certainly could be no objection to his stating it. He answered, "No sir ; so far as I know, I know he was not ;" and then stated the facts fully.

The referee found that at the time the surety requested the plaintiff to proceed and collect the note by action, the principal debtor was insolvent and unable to pay his debts, the gross amount of his indebtedness being considerably greater than the whole value of his property, and that he at all times thereafter so continued insolvent. The evidence fully sustained this finding ; and according to *Herrick* v. *Borst,* (4

Thompson *v.* Hall.

*Hill*, 650,) the referee was right in holding that the surety was not discharged by reason of the neglect of the plaintiff to comply with his request. The defendant's counsel, however, puts this part of the case mainly upon the ground that the defense was good in equity; and he cites 1 *Story's Equity*, § 325; and claims that as the Code now permits equitable defenses, the defense was fully established. I do not understand that a surety could have gone into equity and compelled the creditor to proceed at law and collect the debt, in the absence of all circumstances other than mere delay to sue. Such a bill would have been dismissed upon the ground that the surety had an ample remedy at law, viz: the payment of the debt and bringing an action at once against the principal. *Story* says, in section 324, that there is no positive duty incumbent on the creditor, to prosecute measures of active diligence, and therefore mere delay on his part (at least if some other equity does not interfere,) unaccompanied by any valid contract for delay, will not amount to laches, so as to discharge the surety.

It is a general rule that mere indulgence on the part of the creditor, and neglect to prosecute the principal, will not discharge the surety. (*Schroeppell* v. *Shaw*, 3 *N. Y. Rep.* 446. *Fulton* v. *Matthews*, 15 *John.* 433.)

I think the judgment in this case must be affirmed.

Judgment affirmed.

[ERIE GENERAL TERM, February 12, 1866. *Grover, Daniels* and *Marvin,* Justices.]