Baldwin *v*. The United States Telegraph Company.

---

CHARLES I. BALDWIN and FRANCIS B. BALDWIN, Respondents, *v*. THE UNITED STATES TELEGRAPH COMPANY, Appellant.

(GENERAL TERM, FOURTH DISTRICT, JULY, 1869.)

Where the operator of a telegraph company contracts to send a telegram over his own line, and the lines of other connecting companies, he becomes the agent of each company assuming to forward the message and they are thereupon severally liable (no partnership relation existing between them), upon the agreement as made by him.

So held, in an action against the last company on the route, for its failure to deliver a message to the proper address.

Baldwin *v.* The Unit d States Telegraph Company.

In an action against an intermediate company, which has undertaken tc forward the dispatch, it will be inferred in the absence of proof, that the charges established by its rules and regulations have been paid as provi- ded in § 11, chap. 265, Laws 1848.

The company, originally receiving the dispatch, and payment for the entire distance, thereby undertakes for its through transmission, and without special agreement limiting its liability, is responsible for a breach occur- ing at any point on the route. Per JAMES J.

Subject only to such modifications as the peculiar nature of their business renders absolutely necessary, the law regards telegraph companies as common carriers. Id.

The foregoing rules respecting telegraph companies, deduced from rules, applicable to common carriers, and the latter stated and discussed. Id.

A telegraph company can only limit its liability to the sender of a message by express agreement; mere notice of conditions, upon which it will guaranty accuracy, is insufficient. Id.

The damages recoverable, for a breach of contract to send a telegram, are such damages sustained, as the parties had opportunity to know, and should have expected, would be the probable loss entailed by the default.

A party is under no obligation to protect himself against the consequences of a breach of contract until it occurs. Until then, the contract is his protection.

Where, in an action for breach of contract to send a telegram, the defense is negligence of the plaintiff, the onus is on the defendant to allege and prove it.

A defendant cannot avail himself at the trial, of defenses to which demur- rers have been interposed and sustained.

THE plaintiffs, residing at Ogdensburgh, N. Y., were in the month of November, 1864, the joint owners of certain interests in oil property near Rouseville, Venango county, Pa., which they desired to sell. A portion of this property was an incomplete oil well, which was about to be tested, but the exact condition and value of which were unknown to the plaintiffs. The plaintiffs, having received an offer of $3,800 for their interest, from one Thompson, residing in Rochester, N. Y., decided to accept it, unless the plaintiff, Francis B. Baldwin, who was to go to Rochester and close the bargain, should there receive an answer to the telegram, which forms the subject of this action, informing him that the new well was producing so as to make the property worth more. The plaintiffs accordingly went to the office of

the United States Branch Telegraph Company at Ogdens-
burgh, and there wrote the following message to their agent,
Eric Darling, at Rouseville:

              "Dated Ogdensburgh, *November* 16*th*, 1864.

                   "By Telegraph,

"To Eric Darling, Rouseville, Venango county, Pa., at
Williams' boarding house.

   "Telegraph me at Rochester, what that well is doing.

                     "F. B. BALDWIN."

The message was written upon a piece of paper, on the
upper part of which were printed the following words:

"United States Branch Telegraph Company. Forms and
conditions on which messages are received by this line for
transmission.

"This company will endeavor by good faith and due dili-
gence, to merit the confidence of the public. It will not be
responsible for delays, errors and remissness on the part of
connecting lines, and only guarantees entire correctness
when messages are repeated back to the place from which
they are sent, for which repetition a small extra charge will
be made.

                 "JOSEPH OWEN,
                "*General Superintendent.*"

This printed matter was separated from the message writ-
ten below it by a broad black line, and was wholly uncon-
nected with said message. The plaintiffs handed the message
to Mr. Hall, the operator in the office · of the branch com-
pany at Ogdensburgh for transmission to Rouseville, and at
the same time told him that they had received an offer of
$3,800 for their property at Rouseville from Thompson of
Rochester; that one of their wells was new and they wanted
to know what it was doing; that Darling, to whom the mes-
sage was addressed, was plaintiffs' agent at Rouseville; that
the plaintiff, Francis B. Baldwin, was going to Rochester and
would at once accept the offer of Thompson unless the reply
to this dispatch informed him the property was worth more;
and they wanted to be sure and get the message through to

prevent Francis B. Baldwin selling at $3,800, if there was anything new about the property. After making these statements the plaintiff, Charles I. Baldwin, paid the operator, Hall, the full price demanded by him for transmitting the dispatch to Rouseville, and Hall agreed to transmit it carefully for the amount paid, and said "he would be sure and get it through." The line of the United States Branch Company extended only from Ogdensburgh to Syracuse, N. Y., and there connected with the line of the defendant, which made up the remainder of the route to Rouseville, Pa. The message was correctly transmitted by the branch company to Syracuse. The defendant there received it to be transmitted to Rouseville, and did send it from Syracuse correctly in all respects; but the same was understood by defendant's operator at Rouseville to be addressed to E. R. Cooley, and was consequently never delivered to Eric Darling, but was written out by defendant's operator, addressed to E. R. Cooley, and left at Williams' boarding house.

The plaintiff, Francis B. Baldwin, went to Rochester, and, after waiting several days, and calling repeatedly at the telegraph office for an answer to said dispatch, he accepted the offer of Thompson and sold him the plaintiffs' interests for $3,800. The agent, Eric Darling, was at Rouseville when the message intended for him was received; the new well was tested, and pumping twenty-five barrels; the plaintiffs' interests were worth from five to six thousand dollars, and could have been sold at the time for $5,000. On the 25th day of November, Eric Darling, supposing the plaintiff, Francis B. Baldwin, to be at Ogdensburgh, sent the following message of his own accord:

"Dated ROUSEVILLE, *November* 25*th*, 1864.

"By Telegraph.

"F. B. BALDWIN:

"Well flowing eighty (80) bbls. New well pumping twenty-five (25) bbls. Can sell your interest for five thousand ($5,000) dollars. Telegraph me refusal for ten days. Have Perry transfer to me.     ERIC DARLING."

This message was received at Ogdensburg and immediately forwarded to F. B. Baldwin at Rochester, but did not reach him until after he had sold to Thompson. The cause was tried at St. Lawrence County Circuit, in February, 1868, before the court and jury. The court directed a verdict for the plaintiff for $1,200 damages. From the judgment entered on such verdict this appeal is taken.

*Lowrey, Franzioli & Soren,* for the appellants

*Foote & James,* for the respondents.

Present—JAMES, ROSEKRANS, POTTER and BOCKES, JJ.

By the Court—JAMES, P. J. The facts in this case are undisputed, and only questions of law are presented upon this appeal. The judgment can only be sustained upon the contract made with the operator of the United States Branch Company at Ogdensburgh. The defendant was the second company upon the line of communication over which the plaintiff's message was to be transmitted. Hence the important question is fairly presented, how far are intermediate or remote companies, making up the route of transit, liable to senders of messages for their breach of the contract made with the operator at the terminus of the line, who receives pay for the whole distance, and whose agency they recognize by receiving and transmitting or attempting to transmit the dispatch.

The English rule is that a carrier, who knowingly receives a parcel directed to any particular place, undertakes to carry it there, unless he makes known a different purpose; and, in conformity therewith, it has been repeatedly decided in England, that the sender of the parcel has no contract with the second carrier, and cannot recover of him for damages done on his part of the route. (*Coxon* v. *Great Western Railway Co.,* 5 H. & N., 274.) But the American decisions have wholly overthrown this doctrine, and the prevailing rule in this country is that the carrier receiving the parcel under-

takes only for his own route, unless he makes known a different purpose. (*Van Santvoord* v. *St. John*, 6 Hill, 158.) Under this rule, each carrier who undertakes the transmission of the parcel is liable to the sender for his default. But if the carrier who receives the parcel holds himself out as a carrier for the entire distance by receiving pay for the whole route, or by conduct or language which shows such an undertaking, he may then be held liable for losses on any part of the route. (*Weed* v. *Saratoga and Schenectady Railroad Co.*, 19 Wendell, 534; *De Rutte* v. *N. Y. &c. Telegraph Co.*, 30 How. Pr., 403.) From these cases it results that the first company, receiving pay for the whole distance, cannot be considered the agent of the sender to contract with the next company; for if such were the case, it would present the anomaly of an agent liable to his principal for the fault of a third party whom the principal directs the agent to employ. The liability thus cast upon the first carrier does not, however, relieve the carrier actually in 'fault, but the injured party may, at his option, maintain an action against the carrier receiving the parcel or the carrier committing the breach. If the carrier receiving the parcel and pay for the whole distance expressly limits his liability to his own part of the route, then the only remedy of the plaintiff is against the carrier in fault. The law may be regarded as settled in railway cases, that where a party contracts for transportation over a route composed of several roads, for which he pays an entire sum and receives a through ticket or receipt, the contract is entire and not of several distinct liabilities. If no partnership in fact exist between the roads, he may treat the contract as entire, or several, so far as the other parties are concerned. By the appointment of common agents at the termini of routes who receive the entire consideration and issue through tickets and checks which they recognize and assume, the companies composing the route become bound by the common contract.

In the case of *Hart* v. *The Rensselaer & Saratoga Railroad Co.* (4 Seld., 37), the plaintiff purchased from an agent,

at Whitehall, a through passenger ticket to Troy. The defendant's road made up that part of the route from Ballston to Troy. A portion of the plaintiff's baggage was lost by reason of the omission of the baggage master to separate that going to Troy from that intended for Schenectady. The court charged the jury "that it was not a question whether the baggage was received on defendant's road, but by defendant's agents at Whitehall or elsewhere;" upon which the plaintiff obtained a verdict, and the judgment was affirmed by the Court of Appeals. In a manuscript case, decided at General Term in the eighth district (*Morris* v. *The Michigan Southern Railroad Co.*), the case of *Hart* v. *The Rensselaer & Saratoga Railroad Co.* was held as conclusively deciding that payment to the common agent of the passage money, for the entire line, accompanied by a through ticket, constituted the several companies of which the line was composed, partners as between themselves and the parties making such payment.

Upon the authority of these cases, the Superior Court of Ohio held the Little Miami Railroad Company liable upon a contract made at the depot of the Washington Branch Railroad Company, in Washington city. The plaintiff bought a through ticket, and had his baggage checked through from Washington to Cincinnati. The defendant was the last company upon the route, and in its possession the plaintiff's baggage was found, broken open and rifled. The plaintiff claimed to recover upon either of two grounds: 1st. That whatever relation the defendant might have sustained to the Washington Branch and intermediate railroads, *inter se*, yet, as to the world, they held themselves out as partners; and the plaintiff had, therefore, a right to charge them as such, and to hold each liable for the acts of either or all. 2d. That, independent of partnership, the trunk being found in possession of defendant, in a mutilated condition, throws upon it the burden of showing that the loss did not happen whilst the trunk was in its possession as carrier. The only facts relied upon as going to show a partnership, were the employ-

ment of a common agent at Washington to receive through fare ; the receipt of such fare, and delivery of a single ticket and check for the entire route, and the acknowledgment of the sufficiency of such ticket and check by the several agents of all the companies throughout the route, and to the end of the journey. Judge SPENCER, after an able review of the law, says, "I am of opinion that the contract of transportation may be properly considered as *joint* between all the roads participating in its benefits, and that the defendant is liable accordingly; an opinion," he adds, "in all respects confirmed by Judge REDFIELD, in his Treatise on Railways." (*Thornton Check* v. *Little Miami Railroad Co.*, 7 Am. Law Reg., 427.)

The same view is taken by Professor Parsons, in his learned work on contracts. At page 212, vol. 2, fifth edition, he says : "If carriers for different routes which connect together, associate for the purpose of carrying parcels through the whole line, and share the profits, they are undoubtedly partners, and each is liable *in solido* for the loss or injury of goods which he undertakes to carry, in whatever part of the line it may have happened. If the carriers are not so distinctly associated, but are so far connected that they undertake for the whole line, they should be responsible as before." And at page 214 he says : " The purchase of what is called a through ticket, of an agent authorized by sundry carriers to sell such a ticket, and the price of which is shared in certain proportions by all of them, would estop the carriers from denying a partnership for the whole line, and, at the same time, would perhaps permit the plaintiff, if his person or goods were injured on any part of the route, to sue the carrier on whose route the injury took place, separately."

This well founded rule of the joint liability of connecting carriers, upon the contract made at the terminus of the route, with the common agent who receives pay for the whole distance, applies with equal force and good sense to telegraph as to railroad companies. Judge DALY, in his elaborate opinion in the case of *De Rutte* v. *N. Y., Albany & Buffalo*

Baldwin *v.* The United States Telegraph Company.

*Tel. Co.* (30 How., 403), says: "Where a message is to be transmitted through many connecting lines, it is a matter of convenience to be able to pay the entire charge, either at the place from which it is sent, or at the place where it is received; and it is the interest of companies to make arrangements whereby, upon the payment to them of the whole charge, a message may be sent the entire length of telegraphic communication. *It is to be assumed that this is the case*, when a telegraph company is paid for the transmission of a message to a place beyond its own lines, with which it is in connection by the agency of other companies. For their own benefit, telegraph companies should arrange matters of this kind *inter se, and should be taken, each to have made the other their agents.*"

The case of *Leonard & Burton* v. *N. Y., Albany & Buffalo Tel. Co.*, decided at General Term, in the fifth district, stands upon the same rule, and in many respects, is parallel with this case. The plaintiff's agents sent a message from Chicago, Ill., to Oswego, N. Y., and paid for the whole dis tance. The route was composed of three separate lines; the defendant's line extended from Buffalo to Syracuse; the message was an order for 5,000 *sacks* of salt; the defendant's operator, at Syracuse, changed the word "*sacks*" to "*casks*," from which error the damages ensued. It was held, that the defendant was liable to the plaintiff for the damages resulting from the error.

The same view of the law, as applicable to telegraph companies, was taken by this court at General Term, when the present case was before us on demurrer. Justice POTTER said, in his opinion, in which all concurred, that "the branch company was the agent of defendant for making contracts over the line of both," and that "the contract, made with the agent, whether it arises from implication of law, or by express special terms, is the contract which may be enforced."

The complaint in this case averred, that the lines of the branch company connected at Syracuse with defendant's line, which extended from Syracuse to Rouseville; and that the

plaintiff paid the operator at Ogdensburgh for the whole distance. The answer did not deny this connection, but, on the contrary, admitted that Syracuse was the point of junction of the two lines, and that it there received the plaintiff's message from the branch company for transmission to Rouseville; and that it sent the message from Syracuse correctly, but its operator at Rouseville misunderstood the address, and instead of Eric Darling, wrote E. R. Cooley; and that the message, so altered, was left at Williams' boarding house in Rouseville.

These facts show conclusively, that there was a connection between the two companies; that they, together, made up the whole line of communication, for the use of which plaintiffs had paid; that the defendant recognized the authority of the operator at Ogdensburgh to contract in its behalf, and assumed, and attempted to perform the contract made with him, and, within the cases above cited, clearly establish that the defendant is liable to the plaintiffs for its failure to perform that contract.

By § 11, of chapter 265, of the Laws of 1848, it is made the duty of telegraph companies to receive dispatches from, and for other lines; and on payment of their usual charges, as established by the rules and regulations of each company, to transmit the same with impartiality and good faith. At the time this action was tried, there was no defense made, or proof offered, to show that the usual charges of the defendant, for the transmission of this dispatch had not been paid, as established by its rules and regulations. And from the fact, that defendant received the dispatch for transmission, and undertook to transmit it, for the sum demanded and received, the law will infer, in the absence of proof, that its charges were paid, and its regulations complied with. Neither was there any written contract for the transmission of the plaintiff's message, nor was any such defense presented by the answer when this cause was tried; or proved, or offered to be proved, upon the trial. The defendant, in its original answer, had set up as a defense that the printed matter on the paper on which the plaintiff's

dispatch was written, together with the dispatch, and signature, constituted the contract upon which the branch company undertook to transmit the plaintiff's message, and that the message was not repeated, or requested by plaintiff to be repeated. And as a further defense, that certain printed terms and conditions, upon blanks used by defendant at offices upon its own route, constituted the only contract, upon which the defendant undertook to transmit the message; and that such terms and conditions were not complied with. To each of these defenses the plaintiffs demurred, as not stating facts sufficient to constitute a defence, and this court, at General Term, sustained both demurrers and granted leave to defendant to serve an amended answer. This the defendant refused or neglected to do, and hence these alleged special contracts, terms and conditions limiting the defendant's liability were as effectually out of the case, for all purposes of defence when this action was tried, as if such defence had never been pleaded. The answer must allege all those facts which, when the case of the plaintiff is admitted or proved, the defendant must prove in order to defeat the recovery. The words, *must contain*, are imperative, and the defendant cannot give evidence of any defence of new matter not set up in his answer. (*McKyring* v. *Bull*, 16 N. Y., 297). And such is the rule, even though such defence appear from the evidence offered by the plaintiff in support of his case. (*Brazill* v. *Isham*, 12 N. Y., 9.) Hence it cannot avail the defendants that this printed matter is upon the same papers which the plaintiffs produced in evidence to prove the contracts of the several messages. But even if it could, it would be insufficient; for the utmost that this printed matter could require of plaintiffs, was to pay to have the message repeated; and there was no proof introduced to show that the sum which plaintiffs did pay to have this message carefully transmitted, and for which the operator agreed to send it correctly, did not cover the "small extra charge," mentioned in such print; and from the circumstances the court must infer that it did.

In no event, however, could the printed matter upon this paper be held to limit the liability of the telegraph company. Although telegraph companies are not, strictly speaking, common carriers for the reason that they do not have tangible possession of goods which can be stolen or destroyed, yet from the public nature of their employment, the important matters confided wholly to their care, and the skill and fidelity required in the proper performance of their duties, their legal characteristics become so analogous to those of carriers, that the law must consider them as such, subject only to such modifications as the peculiar nature of their business renders absolutely necessary. In this view, no reason appears why a telegraph company should be permitted to limit its liability in any other manner than a common carrier. The law is well settled, that a carrier cannot limit his liability by notice, even if it be brought to the knowledge of the person dealing with him. (*Dorr* v. *N. J. Steam Nav. Co.*, 11 N. Y., 485.) There must be an express agreement. This rule applies with equal force to telegraph companies, and is fully recognized in *Breese* v. *U. S. Tel. Co.* (45 Barb., 274), as applicable thereto. In that case, the court held the printed heading to the paper on which the message was written, under the circumstances, as something more than a mere notice. After stating that a repetition was necessary, to guard against errors or delays, it says : " And it is hereby *agreed* between the signer of this message and this company, that this company shall not be held responsible, &c.," stating the terms of the agreement, and then follows the date and these words : " Send the following message subject to the above conditions and *agreement.*" After which the message was written and signed. This, the court held to be a clear and express written contract, and, as such, sufficient to limit the liability of the defendant. But the print upon the paper on which the plaintiff's message was written, in this case, is wholly different. It is totally disconnected from the message, and forms no agreement whatever. It is, at best, a mere notice that the company " only guarantees entire cor-

rectness when the messages are repeated back to the place from which they are sent, for which a small extra charge will be made." As such notice, it would be wholly insufficient for any purpose, even had if been pleaded as a defence and non-compliance with its terms properly proved.

The contract in this case was simple and clear. The plaintiffs handed the message to the operator at Ogdensburgh, and requested him to send it to Rouseville. They told him distinctly the purpose the message was intended to accomplish and the consequences that would follow a failure to transmit it. They paid him the price asked for the correct and careful transmission of the dispatch the entire distance, and he received the money and agreed to send the message to Rouseville carefully. All that was said and done related directly to the message in question, and was fully within the scope of the operator's employment as the representative of the companies making up the route. The defendant, by the confessed negligence or incompetence of its operator, failed to perform the contract, and the result followed which the plaintiffs had foretold. They said that Francis B. Baldwin would accept Thompson's offer of $3,800, unless the answer to this dispatch informed him at Rochester that the property was worth more. Defendant, therefore, knew that if the dispatch was not delivered, Francis B. Baldwin would get no answer; that if he got no answer he would sell to Thompson for $3,800, and if he sold to Thompson for $3,800, and the property was worth more, the plaintiffs would lose the difference.

This brings the case fully within the second branch of the rule of damages laid down in *Hadley* v. *Baxendale* (9 Exch., 341), viz.: That the party breaking the contract is liable for such damages as, although not at all or not merely the natural or usual result of the breach, were such as the parties had an opportunity to know, and should have expected would be the probable loss entailed by it under the circumstances of the particular case. The rule in *Hadley* v. *Baxendale* was adopted by the Court of Appeals in *Griffin* v. *Colver* (16 N.

Y., 489), and is recognized as the settled rule in this State upon a breach of contract. Judge SELDEN there says, the objection that the damages claimed were not in contemplation when the contract was made, is removed, if it is shown that the contract was entered into for the express purpose of enabling the party to do some act in connection with his own business, not necessarily connected with the agreement. (See, also *Passinger* v. *Thorburn,* 34 N. Y., 634; *Messmore* v. *The N. Y. Shot and Lead Co., Ms.,* in Court of Appeals, June Term, 1869.*)

This rule of damages has been adopted by the courts in telegraph cases. In *Landsberger* v. *Magnetic Tel. Co.,* (32 Barb., 530), it was held, that plaintiff could not recover his damages, because "*on receiving the dispatch for transmission, the defendant had no information, whatever, in relation to it, or the purposes to be accomplished by it, except what could be derived from the dispatch itself.*" While in *Bryant* v. *Am. Tel. Co.* (1 Daly, 575), it was held, that the damages were recoverable, because, "*from the tenor of the dispatch, and statements, made by the writer to the operator,*" the object of the message was made apparent. This whole subject is elaborately discussed at page 413, of the fourth edition of Sedgwick, on the measure of damages, and the same conclusion adopted. Strong reasons of public policy, and common sense, alike make it necessary, that this should be the rule. Contracts are now frequently made by telegraph ; and telegrams often relate to business transactions, of such a character, that great losses would ensue from a failure to transmit, or an error in transmission. The nature of the business is such, that the sender of a message can only deal with the operator, who receives it for transmission, while it is impracticable to explain in the message itself, the result that would follow a failure to deliver it. It is, therefore, both just and necessary, that the sender of a message should be required to disclose to the operator receiving it, the object of the message, and the consequences which will

* Reported 40 N. Y., 422.

Baldwin *v.* The United States Telegraph Company

follow a failure to deliver it, before he should be permitted to recover consequential damages; while it is equally just and necessary, that when the sender has performed this duty, and the operator, understanding the purposes of the message, undertakes to transmit it, and receives his full price for doing so, that such damages should be recoverable; for this is the only way in which the sender of the message can bring himself within the rules laid down in the cases cited.

The special damages, sustained by the plaintiffs in this case, were sufficiently averred in the complaint, to enable them to give evidence to show that such damages were in contemplation at the time the contract was made. It was not necessary, that the complaint should contain a statement of this evidence. The rule of pleading special damages laid down in *Squier* v. *Gould* (14 Wend., 159), so far as it applies to actions for breach of contract, only requires that the particular injury sustained, should be set out in the complaint. The defendant, thus has notice of the claim made against him, and is not taken by surprise.

It does not help the defendant that the plaintiff, Francis B. Baldwin, waited a reasonable time at Rochester for an answer to his dispatch before making the sale to Thompson. It was expressly understood with the operator who received the dispatch for transmission, that Francis B. Baldwin should accept Thompson's offer, unless the answer to that dispatch informed him that the property was worth more. It was, therefore, his duty to give the telegraph company ample time to deliver the message and receive the answer. But there was no obligation upon Baldwin to send a second dispatch, for the proof shows that the only telegraph line at Rouseville belonged to defendant; and, to require a second message, would be to compel the plaintiff to make a second contract with defendant in order to hold him liable on the first. And if a second message had been sent, and a like error committed, the same reasoning would require him to send a third dispatch; beside, the plaintiffs did not know that there was any breach of their contract. No case can

be found where a plaintiff has failed to recover damages for a breach of contract by omitting to protect himself against a breach before he knew that there was one. It is only when the plaintiff knows that his contract is broken that he is required to protect himself; until then, the contract is his protection. Plaintiffs could not know that defendant had failed to perform the contract for which they had paid. The breach was committed at Rouseville, while one plaintiff was at Rochester and the other was at Ogdensburgh. The only notice that Francis B. Baldwin could have had, was the fact that he received no answer. But this was not sufficient to put him on his guard, for his dispatch called for an answer at Rochester; and hence, had any breach occurred, he had a right to rely upon defendant for information of it, as defendant knew he was waiting at Rochester for information. In the absence of such information, the plainest inference from the failure to receive a reply, was the absence of Darling, or that there was nothing new to communicate. It was plaintiff's duty to attribute it to this obvious cause, rather than assume a breach of defendant's contract. And if Darling was absent, or there was nothing new about the property, a second message would be as fruitless as the first.

But the fact, that the plaintiffs contributed to their own loss, must be affirmatively shown by the defendant. The onus rests upon it. (*Costigan* v. *M. & H. R. R. Co.*, 2 Denio, 609.) No such defense was made in this case. It had been set up in the original answer, but stricken out on demurrer, and the defendant had omitted to plead anew, although opportunity was given. Hence, it was out of the case when tried, and no evidence was produced on the trial, from which the jury could find that such was the case.

It was objected on the trial, that the plaintiffs should not be permitted to prove Thompson's offer, which was by telegraph, without producing the original dispatch. But it was wholly immaterial whether such an offer was made or not. The proof showed conclusively, that plaintiffs told the operator, when they handed him their dispatch, that they

had such an offer, and the contract was made in contempla-
tion of it; and that the sale was actually made to Thompson
for the price offered.. This was sufficient for all purposes of
the case. The only rule by which plaintiff's damages could
be measured, was the difference between the price offered,
and the market value at the time. Of course, the accept-
ance of an offered price precluded the obtaining of the larger
amount, which, had the information been received, the evi-
dence showed to be obtainable. The smallest difference
between the sale to Thompson, and the market value of the
property, was proved to be $1,200. There were no disputed
questions of fact, therefore, for the jury to pass upon, and the
court was correct in directing the verdict for the plaintiffs.

The judgment should be affirmed with costs.