JOHN MARSH, APPELLANT, *v.* MENZO DUNCKEL,
RESPONDENT, IMPLEADED, ETC.

*Request by surety to holder of note, to sue an insolvent maker — effect thereof — Insolvent — who is.*

The liability of a surety, upon a promissory note, is not lessened or terminated by the neglect of the holder to sue the maker upon the request of the surety, where it appears that the maker was at the time of such request and at all times thereafter insolvent.

The term insolvent means one whose estate is not sufficient to pay his debts, or one who is unable to pay all his debts from his own means.

APPEAL from a judgment, entered on the verdict of a jury at the Otsego County Circuit, and from an order denying a motion for a new trial made upon the minutes of the court.

This action was commenced to recover upon a promissory note, of which the following is a copy:

$200.                                COOPERSTOWN, *April* 2, 1877.

On the first day of April next (1878), for value received, I promise to pay John Marsh, or order, two hundred dollars, with interest.

HARVEY L. SMITH.
MENZO DUNCKEL.
ADELBERT SMITH.

Issue was joined by the service of an answer by the defendant, Menzo Dunckel, alleging that he was an accommodation surety on the note, and that he had been released from liability on the same by reason of the neglect of the plaintiff to prosecute Harvey L. Smith, the principal debtor, upon being requested to do so by him.

The cause came on for trial at the Otsego County Circuit, and the jury rendered a verdict in favor of the defendant.

*John Lewis*, for the appellant.

*James A. Lynes*, for the respondent.

BOARDMAN, J.:

This action was against Dunckel, as surety upon a promissory note given by Harvey L. Smith to the plaintiff. At the time when

the note became due, and at all times thereafter until this action was brought, Smith was insolvent, that is, he had not property enough to pay his debts. After the note became due, Dunckel requested the plaintiff to proceed and collect this note. The plaintiff neglected to do so for a period of some six months. The defendant had a verdict.

Plaintiff's counsel requested the court to charge the jury that he is entitled to recover, unless the principal debtor was solvent at the time when the request was made and subsequently and before the commencement of the action became insolvent. The court declined so to charge. The court did charge the jury that the principal debtor was insolvent when the note fell due, and had so continued thereafter. In various forms the fact of the continued insolvency of the principal debtor after the note fell due was insisted upon by the plaintiff, as evidence that no legal injury could have resulted to defendant from the neglect to sue upon defendant's request. Exceptions to the refusal so to hold were duly taken. The learned judge left it to the jury to determine whether defendant had been injured by plaintiff's neglect to collect the note as and when requested, wholly ignoring the question of Smith's continued insolvency and its legal effect.

The same question was presented by request to direct a verdict for the plaintiff upon the ground that there was no evidence showing that the principal debtor was solvent at the time the request was made, and able to pay his debts in the ordinary course of business, which request was declined.

The question is thus fairly presented whether there can be any injury which the law will recognize in the case of a neglect of the holder of a promissory note to sue it upon the request of a surety, the principal debtor being then and all times thereafter insolvent and unable to pay his debts in full when due.

It was conceded by the trial judge, upon a motion for a new trial, that the motion should be granted if *Herrick* v. *Borst* (4 Hill., 650) presents the true rule of law as it now exists in this State. We also think so. But we do not concur in his conclusion that the injury to the surety depends upon the possibility or probability that the debt might have been collected from an insolvent debtor. Nor do we think the recent decisions in the Court of Appeals intend to

establish any such doctrine. Indeed, the case of *Herrick* v. *Borst* (*supra*) has been often cited as authority, as may be seen by reference to Wait's Table of Cases and the supplement thereto, and in not a single instance has a doubt been thrown upon it as a sound authority. In *Remsen* v. *Beekman* (25 N. Y., 557) and *Goodwin* v. *Simonson* (74 id., 135) real estate was the primary fund for the payment of the debt, and the question was, whether the plaintiffs were responsible for losses falling upon the surety by depreciation in value of the property after it was the creditor's duty to go on and collect. They were not questions of continued inadequacy of value in the real estate to pay its debts and incumbrances. The judges do say that some injury should be done to the surety, but they do not say a creditor loses his remedy against the surety if he fails, on request, to sue an insolvent principal debtor. In *Colgrove* v. *Tallman* (67 N. Y., 99) Judge FOLGER says it is the settled law of this State that the surety, while the principal is solvent and can be made to pay the debt, may require of the creditor that he collect it, and if the creditor neglect to do so, and the principal becomes insolvent and unable to pay, the creditor may not then have his debt of the surety, citing *Herrick* v. *Borst* as authority. *Clark* v. *Sickler* (64 N. Y., 231) holds only that the indulgence of a creditor to a debtor will not discharge a surety. These are all the authorities relied upon to change the rule as laid down in *Herrick* v. *Borst.* They do not profess to lay down any new or different rule nor do we think any was intended.

On the contrary, each of the following authorities recognize and adopt the law as laid down in *Herrick* v. *Borst: Warner* v. *Beardsley* (8 Wend., 194); *Huffman* v. *Hulbert* (13 id., 377); *Thompson* v. *Hall* (45 Barb., 214); *Field* v. *Cutler* (4 Lans., 195); *Hunt* v. *Purdy* (in Ct. of Ap., 11 Week. Dig. 82); *Pain* v. *Packard* (13 John. R., 174); *King* v. *Baldwin* (17 Johns. 392, 393); *Maier* v. *Canavan* (57 How., 506). The case of *Pain* v. *Packard* (*supra*) introduced a new rule into our law much doubted, the history of which is given in 1 Parsons on Notes and Bills, 237, note 7. But for that rule defendant would be remediless in this action.

" The term insolvent usually means one whose estate is not sufficient to pay his debts, or one who is unable to pay all his debts from his own means." (*Riper* v. *Poppenhausen*, 43 N. Y., 75.)

One is solvent who has property sufficient to pay all his debts, and all his debts can be collected by legal process. (*Herrich* v. *Borst,* 4 Hill, 652, approved in *Walkenshaw* v. *Perzel,* 32 How., 240; *Brouwer* v. *Harbeck,* 9 N. Y., 594.)

The rule adopted is founded upon principle. There can be no partial discharge of a surety for such a cause. The plaintiff must recover his whole debt or he must wholly fail. The jury cannot speculate how much might have been collected if the creditor had diligently obeyed the request and give a verdict for the balance. Such an investigation would lead to wild and vague conjecture subject to no legal restraints whatever.

An investigation of the evidence might show that the principal debtor's condition as to property was as good when this action was brought as when the note fell due; that the proportion of debts to assets was equally or more favorable to the creditor when the action was brought; that the only difference arose from the securing some unsecured debts, the payment of others and the earning or creating by growth other assets in place of those spent or appropriated. If that should prove to be the case, how can it be claimed that the surety has been injured by the delay unless he has the right to demand that this debt shall be fully paid at the expense and loss of other creditors of the principal debtor. Such a claim is a violation of the principle that equality is equity.

In short we are led to the conclusion that the learned justice was misled, by ambiguous expressions in the books, into the adoption of erroneous views of the law, and that he erred in refusing to direct a verdict for the plaintiff, upon the conceded facts as they existed when application for such verdict was made by the plaintiff and also in his refusals to charge.

For this reason the judgment and order must be reversed and a new trial granted, costs to abide the event.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment and order reversed, new trial ordered, costs to abide event.