WILLIAM WRIGHT, JR., v. C. P. WILLIAMS'S ESTATE.

*Experts. When Decision of County Court not Revisable by Supreme Court. Evidence. Promissory Note.*

Witnesses produced as experts testified as to their peculiar skill in judging of the genuineness of handwriting by comparison. The county court found their testimony to be true, but refused the evidence of their opinion, on the ground that their testimony did not show them such experts as to make their opinion, based solely upon examination and comparison, admissible. *Held*, that if the facts testified to by them were to be regarded as matter of evidence from which the court were to find whether experts or not, such finding was not revisable by the supreme court; but otherwise, if said facts were to be regarded as ultimate, and the perfected ground of a definitive judgment at law.

Action on note for money claimed to have been loaned the intestate. Defence claimed the note a forgery, and gave the plaintiff's testimony before the commissioners in evidence, wherein he testified on cross-examination, that he formerly loaned money, but that from a certain time named to the date of the note, he saved what money he had come in, and with it made the loan in question. To contradict this, the defence offered to show that the plaintiff made loans during the time named, and that certain notes produced were given for money loaned by him during that time. The plaintiff was not a witness in the county court, and no point was made that he did not make the loan in question because he had no money to loan. *Held*, that the testimony offered was not admissible.

The defendant read in evidence certain portions of the plaintiff's testimony on a former trial. *Held*, that the plaintiff had a right to have all he said at the time, in connection with what had been read, and upon the same subject, read to the jury.

Said note, with an indorsement thereon in the plaintiff's hand, was properly in evidence. Plaintiff's evidence tended to show that the payment was made by the intestate, and indorsed at his request; but the plaintiff did not claim that the indorsement, of itself, was evidence of the execution of the note. The defendant requested the court to charge that the indorsement was no evidence of payment, and was not to be considered by the jury in determining whether the note was signed by the intestate or not. The court refused, and charged, that if the indorsement was made in good faith, and the money actually paid by the intestate, understandingly, to be indorsed upon the note, it was a strong circumstance tending to show that he executed the note. *Held*, no error.

Evidence had been given on both sides upon the question of the handwriting of the signature to said note, and witnesses on the part of the defence had testified their

opinion that it was not the intestate's, and had pointed out several particulars wherein they thought it differed from his. The defendant then produced several notes written by and payable to the plaintiff, purporting to be signed by persons since deceased, and offered to prove that plaintiff had presented them against the estates of the makers, and that they had been paid, and claimed that the signatures thereto were forgeries, and offered the notes in evidence, that the jury might compare their signatures with that to the note in suit, and claimed that in certain particulars not pointed out, they were alike. This the court refused. The defendants then made the same offer, and claimed that there were certain peculiarities in the plaintiff's writing in the body of the notes, not pointed out, that also appeared in the signature to the note in suit. This the court also refused. *Held*, no error.

APPEAL from the decision of commissioners, allowing a claim in favor of the plaintiff against the defendant estate. Trial by jury, September term, 1873, Chittenden county, PIERPOINT, Ch J., presiding.

The plaintiff's claim was of a promissory note for $4800, purporting to be signed by the intestate, payable to the plaintiff or bearer, and dated April 30, 1869. The plaintiff's testimony tended to show the making of a loan of the amount of the note, and the execution of the note by the intestate. The defendant's testimony tended to contradict the making of the alleged loan, and to show that the note was a forgery.

John W. Stewart, called as a witness by the defence, testified as follows:

" My professional experience in cases where the genuineness of handwriting has been concerned, is, perhaps, confined to three cases in which I was counsel. I have on some occasions made comparison of signatures; I think on some occasions in banks, more particularly before the present system of banking was adopted. I think I would occasionally look over with the cashier, bills which were said to have forged signatures. I have been a director in the bank since 1858.

Q. " Since that time you have had occasion to compare and examine signatures?

A. " I have done so occasionally as a matter of curiosity. I remember to have done so in the bank on several occasions; I would compare my own judgment with that of the cashier as to the genuineness of the signature—it was accidental or incidental."

The defence also introduced Samuel Huntington, who testified as follows:

" I was director of the bank ten or twelve years. I don't think I have ever had occasion in my business to examine handwriting with a view of determining as to its genuineness, except in looking at the signatures on bank bills, and in no other respect—what has occurred in a business way. I can't tell how frequently; not so frequently as formerly. I think there has been less counterfeit money in circulation within the last five years than formerly. Before the national banking system, it was quite common to have money offered that was doubted, and if we doubted we examined it; I have fac-similes of national bank bills, which I use in my store.

Q. " How was it? examining them, or also comparing them?

A. " I have had no experience, only if I could find another bill like them, I would compare them. I did considerable when I was collecting taxes; I received money most every day, and had occasion to examine.

Q. " And compare with like notes?

A. " If I had one on hand I did. . The fac similes of national bank bills which I have, do not contain the signatures : the bank officers are not on the bills issued by the government. I have had occasion to compare suspected currency with those fac similes, for the purpose of ascertaining its resemblance to the fac simile; not frequently; this is not an examination of the signature, but of the plate; we examine the whole bill if we suspect it. I was postmaster under Johnson about a year and three months. I have no case that I now recollect, when my attention was called to handwriting then; we did not inspect handwriting then, generally; I don't remember any instance when I was called upon to inspect letters, with a view of seeing whom they were written by. I never did business with the intestate; I never corresponded with him."

The defence also introduced W. W. Henry, who testified as follows:

" I have been in the wholesale drug business nearly twenty years.

Q. " State if you have had any experience in examining handwriting, to determine its genuineness; how much, and to what extent your experience has gone?

A. " Any business man has had experience in that line; but I don't know as I have examined enough to call myself an expert; there have been times when we have had 3000 signatures in the store—signatures to receipts for medicine. Sometimes we have had occasion to examine them, to test the genuineness of the sig-

nature ; but not very much. Several times I have had occasion to inspect writing to see whether it was genuine or not. I remember once when Ben. Dewey was in the store ; he thought it was a forgery ; and he was the best judge I ever saw. It was an occasion when he was showing with a glass the difference between a man's writing done in a general way, and a forgery. I don't think one case would make a man an expert. I can't think of any other instance, still I know I have had them. We have had 3000 signatures in the store in the regular course of business—no occasion to doubt them or to inspect them. I have seen the intestate, but never did any business with him."

Neither of these witnesses professed to have any acquaintance with the intestate's handwriting. To each of them the defence exhibited the note in question, as well as a number of papers containing what was conceded and proved to be the genuine signatures of the intestate, and proposed to inquire of them whether, from examination of the contested signature, and a comparison of it with the signatures exhibited, in their opinion the disputed signature was genuine. But the court refused to allow the question to be put, upon the ground that the testimony, all of which the court found to be true, did not show that either of said witnesses was such an expert as to make his opinion, based upon examination and comparison alone, admissible. To which the defence excepted.

It appeared from the evidence of the plaintiff given before the commissioners on cross-examination, and introduced on this trial by the defendant, that on that examination the plaintiff testified in answer to inquiry as to where he obtained the money to make the loan in question, that he had formerly been engaged in loaning money in St. Lawrence county, New York, but as early as the first of October previous to the time of the alleged loan, he had commenced to save the money that came in, and so continued to the time in question, and that the money so saved was the same money he loaned to the intestate. The defence introduced one McEwen, and offered to show by him, in contradiction of the plaintiff's said statements, that during the time named, the plaintiff had made loans of money ; and in connection therewith, offered in evidence certain notes purporting to have been signed

29

by a deceased brother of the witness; and to prove the plaintiff's statement to the witness, that the money named in said notes was loaned within the time named, but the court excluded the testimony; to which defence excepted.

A number of witnesses were introduced on both sides, on the question of the handwriting of the signature in question, and several witnesses on the part of the defence had testified that in their opinion the signature in question was not the writing of the intestate, and had pointed out several particulars wherein that signature differed from his genuine writing. The defence then produced several notes payable to the plaintiff, the body of which were in his handwriting, and which purported to be signed by different persons formerly residing in New York, but then deceased, and offered to prove that the plaintiff had presented said notes against the estates of the makers, and that they had been paid, and claiming that the signatures thereto were forgeries; and offered said notes in evidence, that the jury might compare their signatures with the signature to the note in question, claiming that in certain particulars they were alike. The court excluded the evidence, and the defendant excepted.

The defendant then made the same offer, claiming that there were certain peculiarities in the writing of the plaintiff in the body of the notes so offered, that also appeared in the signature to the note in question. This was also objected to and excluded, and defendant excepted.

The body of the note in suit, and other papers in the case, were conceded to be in the handwriting of the plaintiff; but no attempt was made to show or point out to the jury, any resemblance between such handwriting of the plaintiff and the signature in question. Full minutes of the plaintiff's testimony before the commissioners were taken and read over to him at the hearing, when he admitted them to be correct. The defence produced said minutes, and after proving by the counsel who took them, that they were taken correctly, and had been read over to plaintiff as aforesaid, offered and was allowed to read to the jury certain parts of them. The defence did not offer to show any details of the plaintiff's said testimony, except such as were contained in said minutes.

The plaintiff then insisted that the whole minutes of all the plaintiff's testimony on that occasion should be read. To this the defence objected, and insisted that only such parts thereof as would qualify or explain the parts put in evidence, should be admitted. The court decided that all that the plaintiff said at the same time and in connection with what had been read, and relating to the same subject-matter, the plaintiff had the right to have read to the jury. Thereupon the defendant read the whole. The court was not asked to decide that any particular parts of the statement did or did not come within said ruling. The defendant excepted.

There was an indorsement $288 on the note in suit, in the plaintiff's handwriting, and signed by him, dated April 27, 1870. There was other evidence on the part of the plaintiff that tended to show that this money was in fact paid, and indorsed by the plaintiff at the request of the intestate. The defendant denied that any such payment was ever made, and introduced evidence tending to contradict the plaintiff's evidence upon that point. The intestate died in September, 1870.

The defence requested the court to charge the jury,

1.  " That said indorsement was not evidence of the payment of any sum upon the note, nor to be considered by the jury in determining whether or not Williams made the payment, or whether or not the note was valid.

2.  " That those points of the plaintiff's former testimony, to the admission of which the defendant objected, were not to be weighed or considered by the jury as testimony in the case, but were to be considered only as they might explain or qualify those portions which were introduced on the part of the defence."

The court declined so to charge, and upon the points embraced in said requests, instructed the jury as follows :

" The court desire to charge you particularly in regard to the testimony given by the plaintiff before the commissioners. This evidence is all in the case, and is all for you to weigh; but neither party is bound by it because he put it in ; but you are to give it just such weight as you see fit, in determining whether or not Williams executed this note. Besides this testimony of the plaintiff before the commissioners, there is no positive testimony of the execution of this note by Williams. If the indorsement was made in good faith, and the money actually paid by Williams,

understandingly, to be applied as a payment on the note, it is a very strong circumstance tending to show that he executed the note ; in fact I may say that if Williams paid that money upon the note as interest, for the purpose of having it apply on the note, it would be conclusive of the fact ; because, if no note was executed by Williams, it is not to be supposed that he paid money upon it.  The same evidence which would satisfy you that the money was paid by him to be applied on this note, would, undoubtedly, satisfy you that he executed the note ; but all this is for the jury to determine upon the evidence.  If you find that he executed the note, your verdict must be for the plaintiff for the amount of the note, less the indorsement."

The court explained these propositions to the jury, and in all other respects charged fully as the case required.  No claim was made by the plaintiff that the indorsement itself was any evidence that the note was executed by Williams.

To the omission to charge as requested, and to the charge as above detailed, the defendant excepted.

*E. R. Hard* and *R. C. Benton*, for the defendant.

The witnesses, Stewart, Huntington, and Henry, should have been permitted to give their opinions respecting the genuineness of the signature in question.  These facts established by their testimony gave the defendant a legal right, not subject to any discretionary power of the court, to the opinions of the witnesses as to the genuineness of the disputed signature.  In *State* v. *Ward*, 39 Vt. 225, the witnesses were permitted to testify as experts, upon much less proof of their qualifications as such, than was introduced respecting either of the witnesses whose opinions were excluded in the present case.  And in *Mason* v. *Fuller*, 45 Vt. 29, the question being whether a child had been prematurely born, a witness who had not " read medicine," and " had no knowledge upon the subject of medicine, except what she derived from her experience as nurse," was, upon her testimony that she was the nurse of the mother during her confinement, and had acted as nurse in quite a number of cases, and been in attendance when children were prematurely born, held to be an expert.

The defendant should have been permitted to show by Mc-Ewen, that between the first of October, 1868, and the date of the note in question, the plaintiff had made loans of money ; and in that connection, to introduce the notes of McEwen's brother, with evidence of the plaintiff's admission that they were given for money loaned by him within that period of time. Although, independently of the plaintiff's statement that he, as early as October 1, 1868, commenced saving money that came in, and continued to do so down to the time of the alleged loan to Williams, this testimony would have been entitled to but little weight, still, it was competent as bearing upon the probability of the plaintiff's ability to make so large a loan as the pretended one to Williams. But however this may be, when the testimony offered is considered in connection with the plaintiff's statement above recited, its admissibility seems most obvious.

In cases of this description, it is not to be expected that the defence can produce positive evidence of forgery, for this can rarely be done. In almost every case that has ever arisen, where the defence of forgery has been interposed, it has been sustained, if at all, upon circumstantial evidence, and evidence of very slight circumstances has often been admitted. "Questions of this character, involving, as they do, a great variety of transactions, with the accompanying circumstances, often require the testimony to take a wide range." *Per curiam* in *Tyler* v. *Todd*, 36 Conn. 218. This case affords good illustration of the extent to which the court should go in admitting evidence in such cases. Even in criminal cases, the prevarications of the accused are considered competent evidence of his guilt. If the plaintiff were indicted for larceny of the money loaned to Williams, it would be competent for the government to show that the plaintiff's representations relative to saving money were untrue.

The other notes offered by the defendant for the purpose of comparison, were improperly excluded. *Adams* v. *Field*, 21 Vt. 256. And this error is not remedied by the fact that "the body of the note in question, and other papers in the case, were conceded to be in the handwriting of the plaintiff," and that "no attempt was made to show, or point out to the jury, any resemblance," &c.

The court committed a most obvious error in omitting to charge in literal conformity with the defendant's first request. *Brown* v. *Munger*, 16 Vt. 12; *Roseboom* v. *Billington*, 17 Johns. 182, 187; *Whitney* v. *Bigelow*, 4 Pick. 110.

*E. J. Phelps* and *L. L. Lawrence*, for the plaintiff.

The court was right in excluding the testimony of Stewart, Huntington, and Henry. The evidence did not bring them within any rule of law allowing experts to testify. Neither of them pretended to have had any experience in the matter of examining handwriting which gave them any knowledge or skill above that of every business man. This kind of testimony is so uncertain and unreliable, that if it is to be admitted at all, sound policy requires that those only who are skilled in the art of detecting forgeries, should be received as experts. In New York and Pennsylvania this kind of evidence is excluded entirely. *People* v. *Spooner*, 1 Denio, 346; *Bank of Pennsylvania* v. *Haldeman et als.* 1 Pen. & Watts, (2 Penn.) 181. In Massachusetts the evidence of experts is admitted; but see the opinion of the court in *Moody* v. *Rowell*, 17 Pick. 497, delivered by SHAW, Ch. J. See, also, 4 Am. Law Rev. 641.

The county court found the fact that neither of the witnesses in this case possessed such skill as to make them experts, and excluded them upon that ground. The question of the qualification of an expert is one of fact for the county court, and no ground of error. Such is the law in all cases where the county court is called upon to find a fact before receiving the evidence. In *Janes* v. *Martin et als.* 7 Vt. 96, parol evidence of a lost written instrument was received, the evidence of the loss detailed in the exceptions, and the supreme court asked to review it, but refused. The question, " Does the witness believe in the existence of a God ?" was held in *Scott* v. *Hooper*, 14 Vt. 535, 539, to be one of fact, and no ground of error. In *State* v. *Howard*, 32 Vt. 404, certain declarations of a deceased person were " *offered as dying declarations.*" The county court decided they were not so made, and excluded the evidence. Judge REDFIELD, in the opinion of the supreme court, in review of the question, says : " So, too, the

judge having decided they were not so made as to be admissible as evidence, his decision is conclusive " In *State* v. *Ward*, 39 Vt. 236, this question was before the court, and held the same way.

McEwen's testimony was properly excluded. Whether the plaintiff " commenced to save the money that had come in " in October, or not, was a collateral matter, entirely immaterial to the issue in the case The defence drew this matter out on cross-examination before the commissioners, and it would not have been competent for them to disprove it in that court. *Stevens et als.* v. *Beach*, 12 Vt. 587. After having elicited the statement from the plaintiff on cross-examination before the commissioners, the defence put it in evidence.

The same reasoning that would preclude them from contradicting him with independent proof in the court where the collateral matter is thus drawn out, would preclude them from contradicting it when they put it in evidence, knowing what it was, with no other view than to dispute it.

The statement attempted to be contradicted was, " He had commenced to save the money that had come in," &c., " and had so continued," &c. To contradict this, the defence offer to show, " that during the time named, the plaintiff had made loans of money," &c This was no contradiction of the plaintiff's statement, and for that reason, immaterial, and properly excluded.

The notes claimed to have been forged, and presented to and paid by other estates, and purporting to have been signed by different persons, for the comparison of the signatures thereto with the one in question, were properly excluded. *Hammond* v. *Smith*, 17 Vt. 231 ; *Keith & wife* v. *Lathrop*, 10 Cush. 458.

The exception reserved to the alleged omission of the court to charge as requested by the defendant relative to the effect of the indorsement, hardly requires notice. The plaintiff's evidence tended to show, and if true did show, that the sum specified in the indorsement was actually paid by the intestate at the date of the indorsement, to apply on the note ; and that the indorsement of it was made at the defendant's request. It was in connection with this evidence that the indorsement came into the case, and

nothing was claimed from it by the plaintiff, unless this evidence was found to be true. Any correct charge, therefore, relative to the indorsement, must have been based upon the evidence in the case, and the effect claimed for it by the party. The court were not bound to notice the request, because the proposition they were asked to contradict, had not been claimed by the plaintiff on the trial, and if claimed, would have involved a gross absurdity, self-evident to the commonest intelligence.

But the charge of the court as detailed in the exceptions, did sufficiently and fully meet the point. The case shows that the court explained the propositions of the charge to the jury. Where the entire charge is not given, but only the general proposition, with the statement that such proposition was explained to the jury by the court, the judgment will not be reversed, if the proposition was correct, merely because all the explanation is not set forth. It is to be presumed to have been sufficient and proper, till the contrary appears.

The opinion of the court was delivered by

BARRETT, J.    In respect to Stewart, Huntington, and Henry, whose opinion as experts was offered by defendant, each gave testimony touching the matter of his peculiar skill in judging of the identity of the handwriting which was the subject of comparison. The court found that testimony to be true; and still refused the proffered testimony of their opinion, on the ground that the testimony given did not show that either of said witnesses was such an expert as to make his opinion, based upon examination and comparison alone, admissible. This is tantamount to saying that in the judgment of the court, the facts testified by said witnesses, did not as matter of law, constitute them *experts*, nor as matter of evidence, show that they were *experts*, according to the true idea of the law on that subject. If those facts are to be regarded as matter of evidence from which the court is to find whether experts or not, of course such finding is not revisable in this court. If those facts are to be regarded as ultimate, and the perfected ground for a definitive judgment of law, then such judgment would be revisable in this court. This propo-

sition is in harmony with all the cases in which it has been held that the decision of the county court is not to be revised in this court. In the present case we think it was warrantable for the county court not to find as matter of fact, that the witnesses were experts; and this is equivalent to saying that what the witnesses testified as to themselves, taken to be true, did not constitute them experts. The kernel of this character of *expert*, is, the fact of peculiar *skill*, derived from experience in the particular matter in question; in the present case, in the matter of determining the identity of the handwritings by comparison. For a statement of the law and reference to the cases on this point, see 4 Phil. Ev., Cow. & Hill's notes (ed. of 1849), 112; and note 173, page 52, vol. 3; vol. 4, p. 488; note 258 to page 254, vol. 2.

" The opinions of witnesses are confined to men of science, art, or skill in some particular branch of business." *Crowell* v. *Kirk*, 3 Dev. 356–7; *Corlis* v. *Little*, 1 Green, 232. " In respect to matters which call for opinions founded on peculiar knowledge, it is proper for the court first to ascertain whether the witness be an expert, that is to say, skilled in the matter to which his opinion is desired. They may be satisfied on this question by examining the witness himself and others, as was done in Mendum's case, 6 Rand. 709." See *Davis* v. *Mason*, 4 Pick. 156. " This species of evidence, if admissible at all, must obviously stand upon the general principle allowing persons skilled in a particular science or art, to give their opinions upon questions relating to it, and in respect to which they are supposed to possess peculiar knowledge." Neither of the witnesses professed or testified that he regarded himself as having any peculiar skill, or that in his own supposition he had any such skill as would enable him to rely on his own opinion as to the identity in question. The experience testified to did not of itself, as matter of law, either constitute or conclusively imply such skill. All that experience might have been had by each, and still that peculiar skill have been wanting. It does not help, to say that it might as well have resulted in such skill, or that it was likely to have resulted in such skill, or that it was most likely so to have resulted, unless it

should come up to the point of settling conclusively that it had resulted in such skill. Short of that point, it was for the court to determine the question of peculiar skill, upon the evidence pertinent to it. If the court had found the other way, it would not have been subject to revision in this court, for the reason that the evidence was of an experience in the direction of inducing the peculiar skill, and might have resulted in it, at any rate might be regarded as not being, as matter of law, inadequate to have resulted in such skill.

It is to be repeated, that so long as the evidence or facts do not constitute or conclusively show the skill, and such skill is matter of fact to be inferred from such evidence or facts, the finding of the court in that respect is not revisable as being error in law. So are all the cases. It may not be improper to remark, that while we are not disposed to narrow the scope of the law as it has been developed and applied on this subject, we see no occasion or reason for enlarging that scope. It would be trite to repeat the very uniform expression of judges and the books as to the small value of this kind of evidence, yet it is warrantable to say that such expression is corroborated by our own observation and experience in judicial administration.

What was offered to be shown by McEwen, was offered in contradiction of plaintiff's statements in his testimony given before the commissioners, that testimony having been introduced on the trial in this cause by the defendant. The plaintiff was not a witness on said trial, so it could not be pertinent as impeaching his credit as a witness. As matter of contradiction, then, it could only operate to show that he had falsified in testifying before the commissioners thus: " It was money I had collected on my demands in St. Lawrence county. I commenced saving what I collected about the first of October, 1868." It is not shown by the exceptions nor claimed in the argument, that any point was made by defendant against the plaintiff's claim that he loaned the money, on the score that he had not money in such amount as to render such a transaction likely. If such a ground of defence had been taken, any evidence tending to show want of money for such a loan, would have been proper, whether it was what plaintiff had

said or what he had done. The plaintiff had said nothing to constitute evidence against himself in that respect. He had given no evidence and made no claim on the trial, to be met by evidence that he had not money for such a loan. There was, then, no issue or question before the jury to which the fact that plaintiff had loaned money and taken notes within the time named, could be pertinent. As plaintiff's credit as a witness on the pending trial was not in question, and as his means for making such a loan was not in question, it is difficult to comprehend the view in which the rejected evidence was admissible. Whether plaintiff had saved or loaned money within the time named, was wholly immaterial, except as bearing on his means for making a loan for which the note was given. There being no question on that subject, what he testified before the commissioners, whether true or false, had no pertinency in this trial.

On the subject of the second request of the defendant, the court instructed the jury according to the law as administered in *Mattocks* v. *Lyman,* 18 Vt. 98, as stated in 1 Greenl. Ev. § 201, and as shown and established by the current of leading cases.

As to the first request. That request, and the response to it, are to be considered in view of the state of the case and the posture of the subject as the trial went on. It is expressly stated that no claim was made by plaintiff that the indorsement itself was any evidence that the note was executed by Williams. The note, with the indorsement on it, was properly in evidence, said indorsement being in plaintiff's handwriting. This was all that plaintiff put in as to such indorsement. If defendant had let the matter rest there, the whole subject would have been embraced in his request, and would have been disposed of by a literal compliance with it. But instead of that, the defendant put in what constituted the " other evidence in the case tending to show that the money was in fact paid, and indorsed by the plaintiff at the request of the deceased." The defendant also introduced evidence to show that such evidence was not true. The defendant alone thus presented the subject of that indorsement, and as thus presented, his request did not fully embody the subject. The court were charged with the duty of disposing of it as it was made up

and presented by the course of the trial. The controversy was, whether the payment was made, indicated by the indorsement. No stress was laid on the indorsement by itself, but only on the payment. Unless that was made, nothing was claimed for the indorsement. If it was made, then the indorsement was a proper act, deriving all its character and force from the payment, but really giving no additional effect to the payment as bearing on the genuineness of the note. The court so treated the matter, and properly put it to the jury—giving the defendant the full benefit of all that could be properly claimed by him on that subject. The jury could not mistake it in just the sense indicated by the language of the charge, viz : that the payment was the effective fact, and the indorsement but a resulting incident—of no effect, unless the payment should be established.

As to the offer of the notes in plaintiff's handwriting, purporting to be signed by different persons since deceased, and to prove that plaintiff had presented them against the estates of the said deceased persons, and claiming that said signatures were forgeries, to go to the jury for comparison of those signatures with that to the note in suit, claiming that in certain particulars they were alike : defendant abandons his exception to the rejection of said offer ; but he insists on his exception to the court's rejecting the same offer with the addition of " claiming that there were certain peculiarities in the writing of the plaintiff in the body of the notes so offered, that also appeared in the signature of the note in question." We have no occasion to consider whether the notes offered would have been admissible if offered merely for the purpose of this comparison of the handwriting of the body of them with the signature of the note in question. Such was not the offer, but it was the first offer supplemented with the claim as to the peculiarities in the body of the notes. It was not the duty or the business of the court to dissect and analyze an entire offer, which, as a whole, was illegitimate, and select and allow such elements of it as would be legitimate if standing alone, excluding the rest. We assume, from the abandonment of the claim that the first offer of said notes was legitimate, that it is conceded that such offer was not legitimate. So, though we so hold it, we take

Wright *v.* Williams's Estate.

no time in discussing it, and remark, that no reason is indicated or apprehended, why it is less illegitimate when supplemented by the claim in the second offer. If counsel would have disembarrassed the offer of those notes for the mere purpose of a comparison of the handwriting of the body of them with the signature in question, the former offer of them should not have been incorporated into the second. We think it plain that it was so incorporated, both from the express terms of the second offer, and from the fact that none of the claimed peculiarities were pointed out in connection with the making of the offer, and no use was made of other conceded specimens of plaintiff's handwriting already in the case, by way of instituting or inviting the proposed comparison. It is not taxing ourselves with a very strained conjecture, that the claim appended to the first offer, when that offer was repeated in the second, was made in some hope that it might be regarded as sanctifying the legal view of the first offer, and constitute a kind of sugar-coating, that, while it might render the pill more gustable, would leave it to its full operation as medicinal.

Judgment affirmed.