consent of the owner.   He pleads such circumstances, and the defend-
ant company (by clerical error in its answer, it insists) does not deny
the allegation.   So the precise question is whether, regardless of the
contract or any condition arising from it, the lien of a subcontractor
attaches to the locus in quo, provided his work under the subcontract
was done with the knowledge and consent of the owner.   I think that
it does not.   Section 4 of the lien law (chapter 418, p. 516, Laws 1897)
in part provides:

"If labor is performed for, or materials furnished to, a contractor or sub
contractor for an improvement, the lien shall not be for a sum greater than
the sum earned and unpaid on the contract at the time of filing the notice
of lien, and any sum subsequently earned thereon.   In no case shall the
owner be liable to pay by reason of all liens, created pursuant to this article,
a sum greater than the value or agreed price of the labor and materials re-
maining unpaid, at the time of filing notices of such liens, except as herein-
after provided."

If mere knowledge and consent establish liability in the owner to
the subcontractor, so that the lien of the latter attaches to the locus
in quo, then practically such liability would exist in every case where
the owner knew that there was a subcontractor, and yet permitted him
to continue the work.   In other words, the owner must either show
ignorance of the existence of the subcontractor, or his own refusal
to permit the contractor to do work under his subcontract.   If he
simply stand by and see a subcontractor at work, though presumably
upon his subcontract, yet such acquiescence permits the lien to attach
regardless of the conditions attendant upon the contract.   This ques-
tion is well discussed by the Appellate Term in La Pasta v. Weil, 20
Misc. Rep. 554, 46 N. Y. Supp. 275.   Pell v. Baur, 133 N. Y. 377, 31
N. E. 224, mainly relied upon by the learned counsel for the appellants,
does not establish his proposition.   The discussion on page 382, 133
N. Y., page 225, 31 N. E., is upon the policy of the law which permits
reimbursement despite the nonexistence of agreement between owner
and subcontractor.   The conclusion of the court is not that the lien
attaches merely upon the assent.   Indeed, the practical conclusion of
the court is that the subcontractor has a lien "for the amount of his
debt upon the unpaid portion of the contract price."

The judgment should be reversed, and a new trial be granted, with
costs to abide the final award of costs.   All concur.

(86 App. Div. 397.)

GLENNON v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department.   July 24, 1903.)

1. TRIAL—SUBMISSION TO JURY—DISMISSAL OF COMPLAINT.
    Where, in an action for death, there was no evidence in plaintiff's
    favor on the question of defendant's negligence, the court could dismiss
    the complaint and enter judgment for defendant, notwithstanding the
    previous submission of the case to the jury, and rendition of a verdict in
    favor of the plaintiff.

2. RAILROADS—INJURIES—CROSSINGS—SIGNALS—EVIDENCE.
    The evidence for plaintiff in an action for injuries at a railroad cross-
    ing, as to the want of signals, as against positive evidence to the con-
    trary *held* not sufficient to justify submission of the railroad's negligence
    in that regard to the jury.

Appeal from Trial Term, Orange County.

Action by Ann Glennon, as administratrix of the estate of Richard Glennon, deceased, against the Erie Railroad Company. From a judgment setting aside a verdict in favor of plaintiff and dismissing the complaint, and from an order denying plaintiff's motion for a new trial, she appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, HIRSCHBERG, and HOOKER, JJ.

R. H. Barnett, for appellant.

Henry Bacon (Joseph Merritt, on the brief), for respondent.

HIRSCHBERG, J. The plaintiff's intestate was killed at the village of Goshen, in Orange county, at about half past 9 o'clock in the evening of May 7, 1901, while crossing the defendant's railroad tracks at Main street. There was one eyewitness of the occurrence. According to his story, when the deceased stepped from the curbstone and walked toward the tracks there was a train coming from the west on the east-bound track—the track farthest from the deceased—making considerable noise. When the deceased was within 10 or 15 feet of the first or west-bound track he looked easterly, and, apparently seeing nothing, concentrated his attention upon the train coming from the west until just as he reached the first track he turned again to the east, and was immediately struck and killed by a fast freight train coming from that direction. The witness testified that he did not hear any whistle blown or bell rung by the train which struck the deceased. On the following day, however (that is, May 8, 1901), this witness signed a statement containing the following narration of the occurrence:

"I saw this man coming from the direction of the post office. There was a train coming from the west on the east-bound track. He was hurrying to get across ahead of that train, and was watching it. Just as the train coming east was at the first cross-walk east of the station, and as the man stepped on the west-bound track, the west-bound train struck him. Just before it struck him, he turned his head and saw it, and tried to pull back, but he was too late. The bell on the west-bound train was ringing. I did not hear any whistle. The east-bound train was making a great deal of noise. * * * He did not stop on his way across the crossing, and was walking fast to get across ahead of east-bound train. He did not look the other way—toward the east—at all, and did not notice the train that struck him until it was right on top of him."

In reference to the conflict between his evidence at the trial and this statement, he was asked and answered as follows:

"Q. You stated at that time that this man did not look the other way—toward the east—at all. You state now that he did look toward the east when he stepped off the sidewalk. Is that right? A. Yes, sir. Q. Is your memory better about it now than it was the day after the accident? A. No, not any better, but he was not asking me under oath then."

The witness was examined under oath before the coroner. He then testified as follows:

"I saw this man approach the said crossing from the north side, and from the direction of the post office to the cross-walk leading to the west side of the crossing in front of the Occidental Hotel. I noticed an east-bound train approaching at the same moment, and I saw the man apparently have his

attention fixed to the said approaching east-bound train. Then I saw him walk directly in front of the west-bound fast train, and struck."

The plaintiff's case rests altogether upon the evidence of this witness. There was a great deal of evidence—much of it by employés of the defendant, but some from others—that the engine whistle was sounded as the train in question approached the crossing, and that the bell was rung then and until the crossing was passed. It was also proven that the west-bound track was in sight of the deceased, looking eastwardly, for several hundred feet, as he approached the place where he left the sidewalk, and that from the sidewalk to the track, although the line of vision to the east decreases, the track is visible to a considerable distance, estimated at an average between 485 and 525 feet.

The learned trial justice at the close of the evidence denied a motion made by the defendant for a nonsuit, and submitted the case to the jury, with two specific questions. The jury returned a general verdict in favor of the plaintiff, and answered the questions submitted to the effect that the whistle was not blown, but the bell was rung upon the engine as it approached the crossing.

If the case should have been submitted to the jury, the court was in error in dismissing the complaint, but should have granted a new trial upon setting aside the verdict. McDonald v. Metropolitan Street R. Co., 167 N. Y. 66, 60 N. E. 282. The court was certainly justified in setting aside the verdict, because, in any view, it must be conceded that the preponderance of evidence is in the defendant's favor upon the question of its negligence. If there is no evidence in plaintiff's favor upon that question, however, I think the court was at liberty to dismiss the complaint, notwithstanding the previous submission of the case to the jury. What should have been done at the close of the evidence could be done at any time while the case remained within the jurisdiction and control of the trial court.

On the question of the defendant's negligence there was not sufficient evidence to carry the case to the jury. It is limited to the statement of her witness that he did not hear the whistle or the bell, the force of which (assuming it to have any) is weakened by his statement made the following day to the effect that he did hear the bell, and by his suggestion that the truth is only essential when under oath. While the fact that a whistle is not sounded or a bell rung may undoubtedly be established by circumstances under which neither has been heard by witnesses, the mere unfortified fact that a single witness, not shown to be listening on an occasion when there is considerable other noise, did not hear, can scarcely be said to be any evidence, in a legal sense, as against an abundance of positive evidence to the contrary. Culhane v. N. Y. C. & H. R. R. Co., 60 N. Y. 133. In other words, it is not sufficient evidence to support a finding that the signals were not given. The rule applicable is stated by Judge Cullen in Fealey v. Bull, 163 N. Y. 397, 401, 57 N. E. 631, 632, as follows:

"On the other hand, this court has always asserted the doctrine that a finding of fact, without evidence to support it, constitutes an error of law (Mason v. Lord, 40 N. Y. 476), and that, in law, a finding on insufficient evidence is a finding without evidence (Pollock v. Pollock, 71 N. Y. 137). In the last case Judge Folger quoted Maule, J. (Jewell v. Parr, 13 C. B. 916, 76

E. Com. L. Rep. 909), with approval, as saying: 'When we say that there is no evidence to go to a jury, we do not mean literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established.' * * * There must be not only some evidence, but the evidence must be sufficient in its nature to warrant the court in submitting a cause to the jury. * * * A witness may be so discredited by his own confession that his uncorroborated testimony is insufficient in law to justify a verdict."

It follows that the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.