HARRIS STRUCTURAL STEEL COMPANY, Plaintiff, *v.* PAUL CHAPMAN, Defendant.

Municipal Court of New York, Borough of Queens, Sixth District, April 30, 1937.

*Robert B. Thomas [Harvey Smedley of counsel], for the plaintiff.*

*Paul Chapman, defendant, in person.*

PETTE, J. This action was originally brought by the plaintiff to recover the sum of twenty-six dollars from the defendant as his alleged share of rent incurred for the hearing conducted by the arbitrators at the Bar Association Building. The defendant interposed an answer consisting of a general denial, several defenses, and a counterclaim for breach of contract in the sum of $1,000.

Upon the trial of this action before this court and a jury, the plaintiff withdrew its claim and the issues were submitted to the jury solely upon the matters of proof and damage as to the alleged counterclaim. During the course of the trial the plaintiff made the usual motion for a dismissal of the counterclaim upon which decision was reserved by this court. The jury returned a verdict in favor of the defendant and against the plaintiff for the sum of $500.

A motion was made by the plaintiff to set aside the aforesaid verdict as contrary to the law, contrary to the evidence, and against the weight of the evidence, and upon the grounds set forth in section 549 of the Civil Practice Act, except for insufficiency of damages. Decision was reserved upon the aforesaid motion.

This action represents an unusual set of facts for the Municipal Court. The facts, briefly, are as follows:

The plaintiff is engaged in the business of furnishing steel and in the construction of steel bridges, etc. The defendant is an engineer of many years standing. In the instant case the defendant appeared as his own counsel although his former attorney, Max Levy, appeared as a witness on his behalf during the course of the trial.

From the voluminous record, consisting of numerous exhibits and somewhat lengthy testimony, it appears that on or about February 5, 1936, the president of the plaintiff corporation and the defendant agreed upon a certain arbitration submission. The controversy submitted to the three arbitrators subsequently selected was in regard to professional services rendered to the plaintiff by the defendant. The submission to arbitration was actually made and dated on February 20, 1936, and was subsequently canceled and terminated pursuant to a stipulation dated November 23, 1936, signed by the defendant and his attorney. The answer interposed by the defendant herein, among other

things, contains a counterclaim for alleged damages in the sum of $7,500, which the defendant consented to be reduced in the sum of $1,000 in order to conform with the jurisdiction of this court. The counterclaim is based upon alleged damage caused by the plaintiff's delay in the arbitration hearings. Upon the trial of the action great leeway was given to the defendant in the matter of his proof of said alleged damages, since he did not employ trial counsel, and this court wished to afford said defendant every opportunity to present his contentions to the jury.

The crux of the defendant's alleged damage is set forth in his bill of particulars sworn to March 1, 1937, wherein it is stated, " Loss of professional engineering business and time during the 225 day default of plaintiff, and resulting therefrom, over $6,350," in addition to $1,000 legal fees incurred by the bringing of actions in the Supreme Court to compel plaintiff to proceed with the arbitration hearings.

The general rule that indemnity is to be awarded is subject to certain qualifications: (1) The damages must flow directly and naturally from the breach of the contract; (2) they must have been reasonably within the contemplation of the parties; (3) they must be certain in their nature. Another qualification arises out of the duty of a party to take reasonable precautions to minimize his damages.

It is frequently difficult to apply the rules of damages and to determine how far and when opinion evidence may be received to prove the amount of damages; and the difficulty is encountered in a marked degree in this case. One who violates his contract with another is liable for all the direct and proximate damages which result from the violation. The damages must be not merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract. They may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed. They are nearly always involved in some uncertainty and contingency; usually they are to be worked out in the future, and they can be determined only approximately upon reasonable conjectures and probable estimates. They may be so uncertain, contingent and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages

whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain.

The general rule is that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205, 212.)

The law also requires that the party subject to injury shall take all reasonable precautions to reduce or minimize the consequential damages, and on his failure to do so will not permit him to recover for damages which would have been prevented by such reasonable precautions. This rule is applied in case of a breach of contract. (*Losei Realty Corp.* v. *City of New York*, 254 N. Y. 41, modfg. 226 App. Div. 685; *Elsman* v. *Glens Falls Indemnity Co.*, 146 Misc. 631; *Milton* v. *Hudson River Steamboat Co.*, 37 N. Y. 210; *Dillon* v. *Anderson*, 43 id. 231; *Baldwin* v. *United States Tel. Co.*, 45 id. 744, 753, revg. 1 Lans. 125; *Parsons* v. *Sutton*, 66 N. Y. 92, 98; *Claflin* v. *Meyer*, 75 id. 260, 267, revg. on other grounds, 43 N. Y. Super. Ct. 1; *Horton* v. *Bauer*, 129 N. Y. 148, 154; *Rochester Lantern Co.* v. *Stiles & Parker Press Co.*, 135 id. 209, revg. 40 N. Y. St. Repr. 851; 16 N. Y. Supp. 781; *Milage* v. *Woodward*, 186 N. Y. 252, 257; *Norske Ameriekalinje* v. *Sun P. & P. Assn.*, 226 id. 1, revg. 183 App. Div. 890.)

If by means of the precautions taken the damages are reduced, the limit of the recovery for compensatory damages is his actual damages plus the additional expenses so incurred.

The rule is laid down in the early case of *Hamilton* v. *McPherson* (28 N. Y. 72, 76), wherein the Court of Appeals held: " The law, for wise reasons, imposes upon a party subjected to injury from a breach of contract, *the active duty of making reasonable exertions to render the injury as light as possible.* Public interest and sound morality accord with the law in demanding this; *and if the injured party, through negligence or wilfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him.* (*Miller* v. *Mariners' Church*, 7 Greenleaf, 51; *Shannon* v. *Comstock*, 21 Wend. 461; *Heckscher* v. *McCrea*, 24 id. 309; *Clark* v. *Marsiglia*, 1 Denio, 317; *Spencer* v. *Halstead*, Id. 606; *Loker* v. *Damon*, 17 Pick. 284.)"

In the instant case the defendant offered *no proof* upon the trial of this action as to the steps that he took, or could have taken, in the reduction of his alleged damage during the eight months' waiting period. The inference is reasonable that damages might have been lessened, and the duty of reasonable diligence upon the part

of the defendant to lessen the damages must be considered. (*Losei Realty Corp.* v. *City of New York*, 254 N. Y. 41; *Hamilton* v. *McPherson*, 28 id. 72, 77.)

*To hold that one who contracts with another for services may claim damages for delay for a long and indefinite period would in some cases lead to great hardship. Such results do not naturally and obviously flow from the breach.* (*Losei Realty Corp.* v. *City of New York, supra.*) The just claims of the parties would ordinarily be satisfied by treating the contract as abandoned or terminated after waiting a reasonable time for performance to proceed, and by claiming indemnity for the delay up to that point.

The general rule is that where a witness is a party to the action and personally interested in establishing the value of services rendered, such fact does not disqualify him to testify as to the value thereof, if otherwise competent. (*Mercer* v. *Vose*, 67 N. Y. 56; *Knickerbocker L. Ins. Co.* v. *Nelson*, 78 id. 137; *Hangen* v. *Hachemeister*, 114 id. 566.) *Such expert testimony as to value, even though uncontradicted by similar evidence, is not conclusive.* (*Mattlage* v. *New York El. R. R. Co.*, 14 Misc. 291, 295; affd. on opinion below, 157 N. Y. 708; *Chatfield* v. *Hewlett*, 2 Dem. 191; *Isear* v. *Burstein*, 30 Abb. N. C. 71.)

The rules determining the subjects upon which experts may testify, and prescribing the qualifications of experts, are *matters of law;* but whether a witness offered as an expert has those qualifications is generally a question of fact, *to be decided by the trial judge.* (*Slocovich* v. *Orient Mut. Ins. Co.*, 108 N. Y. 56, 62; *Searle* v. *Arnold*, 7 R. I. 582; *Dole* v. *Johnson*, 50 N. H. 455; *Jones* v. *Tucker*, 41 id. 546; *Wright* v. *Williams*, 47 Vt. 222.)

In the case at bar, not only is the claim unliquidated, but there is no basis for any damages in favor of the defendant, excepting the defendant's own opinion evidence which is uncertain and problematical. It is well settled in this jurisdiction that the unliquidated damages recoverable for a breach of contract must be reasonably certain and definite in amount and not speculative or problematic or resting on conjecture. (*Cramer* v. *Grand Rapids Show Case Co.*, 223 N. Y. 63; *Bobrick* v. *Mackenzie*, 192 App. Div. 594; *Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 104, 109; *Prentiss* v. *Greene*, 193 App. Div. 672, 680; *Witherbee* v. *Meyer*, 155 id. 449; *Maurer* v. *Grimm*, 84 id. 575.)

Upon the trial, at the end of the defendant's case, the plaintiff's counsel moved for a dismissal of the counterclaim, on the ground that the defendant had failed to prove the damages which resulted from the alleged breach of the contract. Decision was reserved thereon by the court. No objection as to the reservation of the

motion was made therein, the defendant thereby acquiescing in the court's reserving its decision upon the motion. After the rendition of the verdict by the jury in favor of the defendant, the plaintiff's counsel moved that the verdict be set aside as contrary to the evidence, against the weight of the evidence, and contrary to the law.

In a similar application, in the action of *Bail* v. *N. Y., N. H. & H. R. R. Co.* (201 N. Y. 355), the Court of Appeals held: "When the motion was made *before the verdict* and the decision thereof expressly reserved by the court, with the consent of the parties, until after the verdict the court may then, *notwithstanding the verdict,* render its decision upon the motion and cause judgment to be entered thereon. This has been the practice in the courts of this State for many years. It was so held by Judge WOODRUFF as early as the case of *Downing* v. *Mann* (9 How. Pr. 204) and has been reiterated many times since. (*Glennon* v. *Erie R. R. Co.,* 86 App. Div. 397; affd., 180 N. Y. 562; *Crecelius* v. *City of New York,* 114 App. Div. 801; *Caspers* v. *Dry Dock, E. B. & B. R. R. Co.,* 22 App. Div. 156; *Paltey* v. *Egan,* 200 N. Y. 83.) "

This court feels constrained to grant the plaintiff's motion herein to set aside the verdict of the jury upon the defendant's counterclaim, and the same is hereby dismissed for failure of proper proof. Futhermore, upon the undisputed documentary evidence, more particularly plaintiff's Exhibit 7, the defendant expressly stipulated to the cancellation and termination of the arbitration submission dated February 20, 1936, upon which agreement this counterclaim is based. The conduct of the parties, as expressed by this written instrument dated November 23, 1936, clearly indicates in unequivocal language, a resciscion and abandonment of the submission agreement. (*Zimmerman* v. *Cohen,* 236 N. Y. 15.) The agreement of the parties necessarily binds this court. (*Matter of N. Y., L. & W. R. R. Co.,* 98 N. Y. 452; *Holcombe* v. *Leavitt,* 69 Misc. 232.)

Submit order.