(72 App. Div. 152.)

### McGRATH v. HORGAN et al.

(Supreme Court, Appellate Division, First Department. May 16, 1902.)

1. MECHANICS' LIENS—CONDITIONS PRECEDENT—ABANDONMENT OF WORK.

 Where a contract for the erection of a building requires payments in installments as the work progresses, on the contractor's abandonment of the work on account of the owner's failure to pay an installment it is incumbent on him to show, in order to enforce his lien, a full performance of his obligations, without any substantial omission, as mere conditions precedent to the payment of the installment.

2. SAME—PAYMENT IN INSTALLMENTS—WITHHOLDING INSTALLMENTS.

 Where a contract for the construction of a building requires payments in installments as the work progresses, and the contractor has failed to perform many items of work and to furnish many items of material required by the contract before he was entitled to a particular install-

ment, the owner is justified in withholding such installment, though a demand was made therefor.

**3. SAME—COMPLETION BY OWNER—ENFORCEMENT OF LIENS.**

Where a contract for a building authorizes the owner, on the contractor's neglect or refusal to furnish material or workmen, to declare the work abandoned, and complete it at the contractor's cost, and the owner, in accordance therewith, completes the contract, the contractor may, in equity, recover and enforce his lien for the difference between the cost of completion and the balance unpaid on the contract.

**4. SAME—GENERAL DAMAGES.**

Where a contract for a building authorizes the owner, on the contractor's default, to finish the work, and deduct the cost from the contract price, and the contractor deliberately abandons the work, such provision will not preclude the owner from recovering general damages for the loss reasonably and proximately resulting from the breach.

**5. SAME—DELAY IN CONSTRUCTION—RIGHT TO RENTAL.**

On breach of a contract to erect a building, the owner is not entitled to a month's rental for delay in completion of the building, because the association of which the contractor was a member would not permit other members to take up the contract until after an investigation, where it does not appear that the time consumed in the investigation was essential to a decision of the question, nor that the owner attempted to engage others not members of the association to complete the work, or to obtain more prompt action in the investigation.

O'Brien, J., dissenting.

Appeal from special term, New York county.

Action by John J. McGrath against William G. Horgan and others. From so much of the judgment as adjudges a mechanic's lien filed by plaintiff to be invalid, cancels a bond given on the discharge thereof, and awards an affirmative judgment in favor of defendant Horgan against plaintiff, the latter appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Louis F. Doyle, for appellant.

George Haas, for respondents.

LAUGHLIN, J. This is an action to foreclose a mechanic's lien on premises Nos. 226 and 228 West Seventy-Eighth street, owned by the defendant Horgan, who was erecting thereon a double six-story and basement apartment house. On the 15th day of August, 1899, the plaintiff contracted in writing with the owner to do the plumbing and gas-fitting work, and furnish the materials therefor, for the gross sum of $4,200, payable in five installments, as follows: (1) When all cast-iron sewer, soil, and vent lines are in, and brown mortar, $850; (2) when gas-fitting and water-supply lines are in, and white mortar, $800; (3) when all lead roughing is done, and job tested, and water test passed, and standing trim, $700; (4) when half of fixtures are set and doors hung, $900; (5) when all fixtures are set and job completed, $950; making total amount of contract, $4,200. The time for the completion of the work was left blank. The contract, however, provided that, if the contractor refused or neglected to supply sufficient material or workmen, the owner might, on three days' notice, declare the work abandoned, and complete it at the cost of the contractor. The plaintiff was to be paid in five installments as the

work progressed. On the 7th day of April, 1900, the plaintiff abandoned the work upon the theory that the owner was in default in refusing to make the fourth payment. The plaintiff claims that he had performed all work and furnished all materials required by the contract as a condition precedent to the fourth payment, and that he thereafter demanded such payment, and, upon the owner's default, abandoned the work. The owner claims that the plaintiff had not earned such payment at the time he abandoned the work, and the trial court has so found. The plaintiff gave evidence tending to show that he made a demand, and the owner was unable to pay, but did not deny the plaintiff's right to payment. The owner testified that no demand was made, and gave evidence tending to show that, with reference to some of the items of work upon which it is now claimed that the plaintiff was in default, he had previously drawn the attention of the plaintiff thereto, who promised to complete or remedy the same. The trial court has either expressly or by necessary implication found these facts, also, in favor of the owner. The trial court has found, on sufficient evidence, that it cost the owner the sum of $1,433.54 to complete the contract, and that this was the reasonable value of the work. It will be observed that this is nearly $500 in excess of the final payment, and is some indication that the fourth payment had not been earned.

There was evidence tending to show, and I think it fairly preponderates in that direction, that the plaintiff failed to perform many items of work and to furnish many items of material required by the contract before he was entitled to the fourth payment. He failed to complete the work of furnishing and connecting 14 lines of vent pipes, to extend beyond the roof,—work required before he was entitled to the first payment,—and it cost the owner $76 to complete this work. The contract required the plaintiff to furnish and set 89 fixtures. Forty-seven of these were upon the premises on the 7th of April, but, according to the evidence adduced by respondent, those on the third floor were not set, and it appears that many items in connection with the fixtures that were set had not been either supplied or attached; viz., the rubber aprons and shampoo connections were wanting; the gas logs were not connected; pipes were not painted; covers to tubs were not screwed on; waste pipes and strainers were not supplied; and other similar items of work and materials were not performed or furnished; and there were other items for defective work and damages done and not remedied by plaintiff's workmen. The plaintiff contends that the items of material and work omitted were of such a character that they could have been furnished as well at the completion of the contract; but, conceding this, the plaintiff was required to put the defendant in default before he was at liberty to abandon the contract, and this he could not do, with respect to the fourth payment, without showing that he had discharged one-half of his obligation in respect to furnishing and setting fixtures. In this we think he failed. It appears that it cost $166 to complete the work which the plaintiff claimed to have done, and $191.12 in addition thereto to remedy defects therein. The plaintiff should have remedied these defects, supplied these omissions, and then, if the owner refused

to make the payment, he might with propriety have abandoned the work.

Where a contractor, acting in good faith, removes his men and tools, believing that he has fully completed his contract, but in fact slight omissions are found, which may be readily supplied or remedied, the liberal and just rule of substantial performance obtains in equity; and he may recover a proper reduction from the contract price, being made to indemnify the owner. Even if this rule were to be applied in the case at bar, we think the plaintiff could not recover the fourth payment upon the ground of substantial performance; but we are of opinion that the rule should not be applied with the same liberality in a case where, as here, the contractor deliberately abandons the work, without any pretense of having fully completed his contract, and solely on account of the failure of the owner to pay an installment intermediate the commencement and completion of the work. If the liberal rule of substantial performance is to prevail in such cases, then upon such abandonment it would require an appraisal of the damages to be deducted by the owner, and this would necessarily delay the work. It is one thing to lay down a liberal rule to prevent an owner from reaping the benefit of the services of a contractor who, acting in good faith, leaves the premises on the supposition that his work has been fully completed; and it is quite another to announce a doctrine, not required by any rule of equity, which will lead to endless confusion, delay, and litigation in the execution of building contracts. The summary abandonment of an incomplete contract is likely to prejudice not only the owner, but the rights of other contractors and their employés, as well. When a contractor picks up his tools and orders his men to quit work, on the ground of a breach of contract on the part of the owner in failing to make an intermediate installment payment, he should be prepared to show full performance of all conditions precedent to his right to such payment. The plaintiff refused to proceed with the excution of his contract, and elected to stand upon his strict legal rights. He must, therefore, in order to recover, bring himself fairly within the terms of the contract, by showing performance of the obligations he incurred, "without any omission so substantial in its character as to call for an allowance of damages." Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017; Brainard v. Kings Co., 155 N. Y. 538, 50 N. E. 263. We think that, both in law and in equity, the owner was justified in withholding the fourth payment, even if a demand therefor was made.

The owner, however, having, in accordance with the terms of the agreement, completed the contract work, the plaintiff would ordinarily be entitled, in equity, to recover and enforce his lien for the difference between the cost of completion and the balance unpaid on the contract. Edison Electric Illuminating Co. v. Guastavino Fireproof Const. Co., 16 App. Div. 358, 44 N. Y. Supp. 1026. In the present case the only provision in the contract bearing on the question of damages is that which authorizes the owner, in case the contractor shall default, to finish the work, and deduct the cost

from the contract price. But the plaintiff was guilty of total breach of the contract, in deliberately abandoning the work, and this provision should not be construed as precluding the owner from recovering his general damages. Murphy v. Buckman, 66 N. Y. 297; McCready v. Lindenborn, 63 App. Div. 106, 71 N. Y. Supp. 355. The measure of his damages is compensation for the loss reasonably and proximately resulting from the breach of the contract. Hecla Powder Co. v. Sigua Iron Co., 157 N. Y. 437, 52 N. E. 650; Frieland v. Myers, 139 N. Y. 432, 34 N. E. 1055; Booth v. Rolling Mills Co., 60 N. Y. 487; Baker v. Drake, 53 N. Y. 211, 13 Am. Rep. 507; Wakeman v. Manufacturing Co., 101 N. Y. 203, 4 N. E. 264, 54 Am. Rep. 676. It is claimed that, owing to the breach of contract on the part of plaintiff, the owner was delayed one month in the completion of the building; and he has shown that the fair rental value of the building was $1,000 per month, and has been allowed that amount by the court in adjusting the claims of the respective parties. We think that the owner failed to show satisfactorily that the breach of the contract on the part of the plaintiff either necessarily or reasonably delayed the work for the period of one month, and therefore he has not established that such breach was the proximate cause of the loss of rentals for so long a period. The recovery in this regard has been allowed on the theory that the rules of the Master Plumbers' Association, of which plaintiff was a member, would not permit other members to take up the contract until after an investigation by its executive committee for the purpose of ascertaining whether the owner was at fault in refusing to pay the contractor, and that this committee did not decide the matter until the 30th day of June. It does not appear that so long a time was essential to a decision of the question, or that the parties could have contemplated a delay of such great length; nor does it appear that the respondent made any effort either to engage other plumbers, not members of the association, to complete the work, or to obtain more prompt action on the part of said committee. Furthermore, the evidence is far from conclusive that the building would have been completed earlier had it not been for the delay on the plumbing contract.

For these reasons, that part of the judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. PATTERSON, J., concurs in result.

O'BRIEN, J. (dissenting). I think that not only part, but all, of the judgment should be reversed, and for the following reasons:

The action is to enforce a mechanic's lien for $900,—the fourth payment under a written contract for plumbing and gas fitting, which it is alleged became due on April 6, 1900, at which time, because of its nonpayment, the plaintiff discontinued work. The answer admits that the first three payments were made, but denies that the fourth was due, and avers that the third was prematurely paid on condition

that plaintiff should forthwith deliver all materials and fixtures, which he never did, abandoning the work before the fourth installment was payable, wherefore defendant procured the remainder of the work to be done at an expense of $1,790.66, and lost in rents, by reason of delay incurred through plaintiff's breach, the sum of $1,000, leaving a balance due from the plaintiff. The defense of a new agreement, whereby the plaintiff was to "forthwith deliver" all the fixtures, is based upon a letter, signed by the plaintiff when he received the third payment, that he "would proceed with all possible dispatch to complete the plumbing work * * * according to my original contract, * * * provided that payments are made as the work progresses according to the contract." This certainly is not an agreement to furnish forthwith all the fixtures, nor anything more than a ratification of the original contract, and may be disregarded. It throws a flood of light upon the situation, however, and is therefore most helpful in discovering the true relations of the parties. As testified, its purpose was to enable the defendant to procure more money or advance loans in order to complete the erection of the building, and it appears that the entire work hinged upon the defendant's receiving moneys by way of loans which were made to him as the structure neared completion. Thus in this very contract under which the plaintiff claims, the installments were made dependent not alone upon the plaintiff's work being done, but upon the defendant's receipt of payments. The first installment of $850 was due when iron sewer, soil, and vent lines were in, "and brown mortar payment is due"; the second, of $800, when gas-fitting and water-supply lines were in, "and white mortar payment is due"; the third, of $700, when rough-leading and testing was done, "and standing trim payment is due"; the fourth, of $900, which is sued for, "when half of fixtures are set and doors hung, payment is due"; and the last payment, of $950, was to be made "when all fixtures are set and job completed." The plaintiff testified that he had difficulty in obtaining the third payment from the defendant, because the latter was out of funds, and he insists that the payments should be in accordance with the terms of the contract, and this was embodied in the letter he signed; that on the 28th of March, 1900, he sent word to the defendant that half of the fixtures, as called for in the fourth payment, would be set on April 6th; and that on April 7th, in conversation with defendant's superintendent, the latter admitted that half of the fixtures were set, and promised that payment would be made the following Monday morning, April 9th. Plaintiff's workman corroborates this testimony, and the superintendent himself says that plaintiff came to see about his payment, and he told him if he was right he would get his money. And by letter dated April 7th plaintiff notified defendant that the fourth payment was due. Not having been paid, he discontinued work; and he testifies that the defendant, in conversation about April 12th, said he did not have the money to give him, and suggested that he put in more fixtures, so a new loan could be had, which he refused to do, although he did write a memorandum to the effect that "90% of the balance of the fixtures * * * can be delivered in three days

after order for same is given by me." The payment, however, was never made.

It thus appears that the real difficulty, which was the one recognized by the parties, was the inability of the defendant to get funds with which to meet the demands made upon him in the erection of the building; and the contention that the plaintiff had not strictly performed his contract, and was not, therefore, entitled to payment, resulted from an afterthought. It is urged that the rule to be applied in determining the merits of this contention is not whether the plaintiff had substantially performed the work required to entitle him to the fourth payment, but whether he had performed his obligations "without any omission so substantial in its character as to call for an allowance of damages," inasmuch as in this case the plaintiff left the work before the entire contract was completed, and brought suit to recover the installment earned and not paid. The words which we have quoted form a part of what was said in the case of Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017, which contains an admirable statement of the law on the subject. As therein said:

"The question of substantial performance depends somewhat on the good faith of the contractor. If he has intended and tried to comply with the contract, and has succeeded, except as to some slight things omitted by inadvertence, he will be allowed to recover the contract price, less the amount necessary to fully compensate the owner for the damages sustained by the omissions. * * * But when, as in this case, there is a willful refusal by the contractor to perform his contract, and he wholly abandons it, and, after due notice, refuses to have anything more to do with it, his right to recover depends upon performance of his contract, without any omission so substantial in its character as to call for an allowance of damages if he had acted in good faith."

The crucial question, therefore, which determines which rule shall be applied, is whether or not the contractor has acted in good faith, and not whether or not he is suing to recover an installment, rather than the entire or final payment. Here the evidence is that the contractor did act in good faith, and intended and tried to comply with the terms of the contract whereby he was to receive the fourth installment; and we think, therefore, that the general principle of substantial performance should govern in determining his rights.

Furthermore, we should give to the contract under consideration a fair interpretation from the standpoint of those who made it, and not according to its literal phraseology. It was intended to provide a measure of the work, and thus set the time for the partial payments. Certain leading items were specified, and the condition was attached that the defendant himself received a stated installment. The final payment, which was larger than the others, was to be made "when all fixtures are set and job completed." Evidently if each and every implied detail of the work which, under a precise and rigorous construction, would be grouped in one of the earlier payments, was actually intended to constitute a condition precedent to the several payments, then these words, "and job completed," would be without meaning. A just and manifest interpretation of them, however, would be that all the various unessential and minor details of the different classes of work should be performed and

completed, not before payment was due by earlier installments, but only before the final payment. This interpretation, moreover, is borne out by the actual conduct of the parties; for though it is now insisted that the plaintiff was not entitled to the fourth payment, relating to the setting of fixtures, because he had not put in place certain vent-pipe extensions, this work belonged, strictly speaking, to the first payment, which, together with the later payments, was made without such or any objection being made. It is admitted that the "doors-hung payment" had been received by the defendant, and that there were more than half (or 47 of 89) of the fixtures set, and at least half of each kind, which are the two requisites stated for the fourth payment. Because, however, of the failure of the plaintiff to actually set the vent pipes mentioned, to put in place detachable rubber aprons and shampoo connections in the bath rooms, to paint the pipes, to screw on covers furnished for tubs, to replace some broken slate, to connect a waste pipe, to supply certain strainers, to rectify a leak in a valve and in a gas pipe, to repatch some plastering necessarily removed to adjust pipe, it is claimed that he forfeited his right to the fourth installment. The deficiencies specified were covered, we think, by the final, and not the fourth, payment, and therefore constituted no reason for the defendant's failure to pay the sum demanded; but, even if they were matters which should have all been attended to prior to the fourth installment, none of them were of such a character as to preclude plaintiff from payment for what he had in good faith performed, provided he had substantially completed his work up to that time. Each of the alleged defects were reasonably explained by the plaintiff. The vent pipes, though furnished, were not adjusted at the time, as the tin roof was not on, and the calking of these pipes was deferred till such work was done. The rubber aprons and connections were obtained, but, in order to keep them clean and safe, were not attached, and, when sent to the premises with some other material after April 7th, were refused by the defendant. On the remaining items, some were not even mentioned in the specifications, as they were so trivial, and all could be most readily and satisfactorily attended to,—as, for instance, the painting of pipes, the repairing of leaks, and the patching of plastering, when the final touches were given. None amounted to deviations from the contract, and all were minor in character. The substantial and real requirement for this payment—that half the fixtures, the bath tubs, pipes, faucets, etc., which augmented the value of the building, should be put in— was complied with. What is required, as said in Phillip v. Gallant, 62 N. Y. 264, is that "there must be no willful or intentional departure, and the defects must not pervade the whole, or be so essential as that the object which the parties intended to accomplish, to have a specified amount of work performed in a particular manner, is not accomplished."

We think the plaintiff's evidence abundantly shows that he has fairly and justly earned the sum for which he sues to recover, and the judgment, accordingly, should be reversed, and a new trial ordered, with costs to the appellant to abide the event.