NATIONAL SURETY CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 24767.)

Court of Claims, October 29, 1938.

480

*Kissam, Murray & Hayden* [*J. Francis Hayden* of counsel], for the claimant.

*John J. Bennett, Attorney-General* [*Jacob S. Honigsbaum, Assistant Attorney-General,* of counsel], for the State of New York.

GIBBS, J. The National Surety Corporation, claimant, seeks to recover $611.05, with interest, which it alleges it was unjustly obliged to pay to the State of New York. The claimant paid this sum under protest on July 27, 1936, and it is agreed that the

National Surety Corporation properly reserved its right to bring this claim.

The dispute arises out of the cost of completing a contract made May 7, 1931, between Jacob E. Brown, Inc., contractor, and the State of New York. The contractor agreed to do certain heating work in six buildings at the Pilgrim State Hospital, Pine Aire Station, New York. The completion bond for this contract was furnished to the State by the National Surety Company.

On or about July 27, 1932, the contract of Jacob E. Brown, Inc., for the said heating work was declared null and void by the State, because the contractor had abandoned the work. After notification to the National Surety Company by the State of the abandonment of the contract in question, the National Surety Company requested the State to readvertise and relet the unfinished work, the amount of damages being deferred until the work was finished.

The original heating contract required that the contractor maintain fire insurance on all work and materials included in the contract, with certain exceptions immaterial in this case.

April 29, 1933, the National Surety Company was placed in the hands of the Superintendent of Insurance of the State of New York for rehabilitation.

The claimant corporation, National Surety Corporation, was organized thereafter, and by an assumption agreement assumed the liabilities of the former National Surety Company occurring on and after May 1, 1933. June 9, 1933, the claimant executed and delivered to the State of New York a blanket assumption certificate covering the bonds of the National Surety Company then held by the State.

Of the six buildings at the Pilgrim State Hospital, the heating work was completed in five of them by the first of December, 1933, and these buildings were occupied and used by the State during that year. The sixth building was occupied November 20, 1934.

At the time the heating contracts on these buildings were relet by the State, the State took out its own fire insurance policies on the buildings, and these were not canceled until April 11, 1935, and the final certificate of completion was not issued by the State Engineer until October 19, 1935.

In making its claim against the National Surety Corporation for the difference between the cost of completing the construction work under the new contracts entered into by the State, and the cost as fixed in the original construction agreement with Jacob E. Brown, Inc., the State includes the amount of $1,260.42 for insur-

ance premiums. Of this amount, about $900 represented charges by the State for the cost of insurance on the various buildings between the dates when the buildings were actually occupied and the date of the final certificate. If the National Surety Corporation was not liable for the cost of insurance during the period the buildings were actually occupied and before the date of the final certificate of completion, the State has suffered no damage as a result of the abandonment by Jacob E. Brown, Inc., of its contract, and the claimant in this case is entitled to $611.05, which it has paid under protest for the damages which the State claims that it has sustained.

The State bases its contentions on the provision of the original contract with Jacob E. Brown, Inc., sections Nos. 100 and 101. In these two sections it is provided that insurance policies shall run until the date of the final certificate, and policies expiring on a fixed date before certificate of acceptance is issued should be renewed and refiled by the contractor. It is also provided that if any building should be occupied by the State prior to the issuance of final certificate, the insurance policies covering such work will " upon request, be returned to the contractor."

The State claims that no one requested the cancellation of the fire insurance upon the issuance of the final certificate in 1935, and, therefore, the surety must bear the cost of the insurance until the date the certificate was issued.

The National Surety Corporation maintains that it was in no position to demand a return of the insurance policies, because no notice of occupancy of the buildings was ever given it; and that the insurance premiums after the buildings were occupied are not properly considered a cost of completion within the contemplation of the original contract.

The cost of insurance on the buildings after they were occupied by the State was not an expense properly chargeable to the claimant.

After the abandonment of the contract the State was clearly entitled to complete the construction by means of new contracts, and to recover the entire increased cost from Jacob E. Brown, Inc., or its surety, whose obligations are now carried by the Nati nal Surety Corporation. Such costs of completion, however, incl ide only those incurred reasonably and in good faith. (*Losei Realty Corp.* v. *City of New York*, 254 N. Y. 41, 47; *Mayor* v. *Second Ave. R. R. Co.*, 102 id. 572; *McGrath* v. *Horgan*, 72 App. Div. 152, 156; *Kinney* v. *Massachusetts Bonding & Ins. Co.*, 210 id. 285, 293.)

In ascertaining the reasonable cost of completing the work contracted for, the specifications of the contract should be reasonably construed according to general practice, and especially should

this be the case where the specifications do not provide for a particular situation which arises. Article 3, subdivision 18, of the general conditions in this contract provides for such an interpretation. (See, also, *Afgo Engineering Corp.* v. *State*, 244 App. Div. 395; affd., 268 N. Y. 716.)

The particular provision, article 24, which must be construed in this case, states that insurance policies shall run until the date of the final certificate, but that if any building is occupied before such date the insurance policies covering such work will be "returned" to the contractor "upon request." The language of the entire article shows a general intention not to require insurance on buildings which are occupied by the State. The special clause relating to the return of policies does not use language expressly making formal demand a condition precedent to the return of such policies, and seems to go no further than putting the responsibility on the contractor of asking for the return of his insurance policies.

When the State undertook the completion of the work, however, the record shows that it took out its own insurance. This special clause, therefore, regarding the return of the insurance policies to the contractor certainly could no longer be applicable. Under such circumstances, the substantial intent of article 24 should prevail, that is, insurance should not be charged to the contractor or its surety after the buildings were occupied. This situation is somewhat analogous to that of *Weeks* v. *O'Brien* (141 N. Y. 199). In that case the contract called for the architect's certificate before payment to the contractor. The court held that when the owner completed the contract himself that condition was no longer applicable.

Furthermore, after April 29, 1933, the original surety, National Surety Company, could not be expected to demand return of the policies. Since that date it has been in the hands of the State Department of Insurance for purposes of rehabilitation, and if there was any duty of this surety to request cancellation of the policies, that duty has devolved upon the State itself through the rehabilitation proceedings, and the National Surety Corporation, a distinct and new corporation, cannot be charged with any delinquence of the National Surety Company. Due to the fact that the State is an entity, the duty to make the demand ("request" is the word used in the contract) which originally existed between the State and the original contractor became inoperative; the entire matter, after the State Insurance Department took over the surety company, was in the hands of two State Departments, to wit, that of Audit and Finance and the Insurance Department;

and to hold that a demand was still necessary was equal to holding that the State demand of itself that it perform a certain act, which reduces the demand or " request " to an absurdity.

The State's argument that the claimant is chargeable with the insurance because no demand was ever made by the claimant for discontinuance of the insurance after occupancy of the buildings, is further weakened by the well-recognized rule of law which wisely imposes upon a party subjected to injury from breach of contract, an active duty to make reasonable efforts to render the injury as light as possible. (*Hamilton* v. *McPherson,* 28 N. Y. 72; *Lozei Realty Corp.* v. *City of New York, supra; Harris Structural Steel Co.* v. *Chapman,* 162 Misc. 709.)

If the State intended at all times to insist on the formal demand for cancellation of the policies, the active duty of the State under the circumstances of this case was to notify the claimant, National Surety Corporation, of the completion and occupancy of the buildings. The State must have realized that information concerning completion and occupancy would not likely be given to the claimant by any one other than the State itself. Unless the State fulfilled this duty, a continued delay, intentional or otherwise, in the issuing of the final certificate, would result in an arbitrary increase in damages, in effect charging to the claimant the expense of insurance ordinarily carried by the State.

The claimant is entitled to recover $611.05 and interest from July 27, 1936.

BARRETT, P. J., concurs.